URNER, CITY AUD., ET AL. *v.* THE STATE, EX REL. ALCORN.

(Decided May 6, 1935.)

*Mr. John D. Ellis,* city solicitor, and *Mr. Edward F. Alexander,* for plaintiffs in error.

*Mr. Wm. Thorndyke* and *Mr. Robert S. Alcorn,* for defendant in error.

MATTHEWS, J. This action in mandamus arose out of certain expenditures claimed to have been unauthorized by law—expenditures from the "Motor Vehicle License Fund" and the "Gasoline Tax Fund" made

by the city of Cincinnati in the year 1929. Later, by amendment to the petition and supplemental petition, the action was enlarged to include expenditures from those funds in 1930, 1931 and the first half of 1932, and the interest earned on the funds, but credited to the general fund.

The laws imposing an automobile license tax and a tax on gasoline have always prescribed the use to which the money could be applied. Generally speaking, the use has always been limited to street and highway purposes. Originally, it was limited to "maintaining and repairing public roads, highways, and streets." Later, the law was amended to permit the use of the funds for "construction and repaving", and for maintenance and repair as well. See 99 Ohio Laws, 538, 108 Ohio Laws, Pt. 2, 1078, 113 Ohio Laws, 280, 114 Ohio Laws, 237, 114 Ohio Laws, 855, relating to the license fund; and 111 Ohio Laws, 294, 113 Ohio Laws, 278, 114 Ohio Laws, 236, 112 Ohio Laws, 509, 113 Ohio Laws, 70, 114 Ohio Laws, 507, constituting the principal modification of the enactments now codified as Sections 6309-2, 5527, 5537, 5541 and 5541-8, General Code. In addition, the Legislature has authorized its expenditure for poor relief. At no time has all limitation been removed, so as to authorize the use of the money for any lawful purpose of the municipalities.

The trial court found that $125,027.50 from the license fund and $34,775.49 from the gasoline fund had been used for lawful municipal purposes, to which the funds raised by taxation for general city purposes might have been devoted, but that the purposes were not included within those for which the license and gasoline taxes were levied. In view of the basis of our conclusion in this case, it will not be necessary to review the conclusions reached by the trial court in this respect.

The trial court made separate findings of facts and conclusions of law, and upon them a judgment was

rendered, directing the City Auditor of the city of Cincinnati to draw orders upon the general fund of the city of Cincinnati, and directing the Treasurer thereof to honor such orders in favor of the Motor Vehicle License Tax Fund and the Gasoline Excise Tax Fund for the amounts which had been found to have been improperly drawn therefrom. The correctness of this judgment is now under review.

The court found that the city of Cincinnati had expended during each of the periods in question, from money raised by general taxes upon street maintenance, repair and construction, more than the amount found by the court to have been taken contrary to law from these funds.

The court also found that the Council of the city of Cincinnati had at no time appropriated any money for the reimbursement of these funds, and that at the time of the finding (December 19, 1933), there was no money in the treasury of the city of Cincinnati appropriated for such reimbursement. There was no finding that there was or was not any unappropriated money derived from taxation for general municipal purposes in either the year 1929, 1930, 1931, or 1932; or that there was any unappropriated or unencumbered money of any sort in the treasury.

In *James* v. *West*, 67 Ohio St., 28, at page 49, 65 N. E., 156, the court said:

"By virtue of Section 5205, Revised Statutes, a court may enter judgment without finding the facts upon which the judgment is based, except generally, and such is also the rule in equity practice; but when a court makes a special finding of facts, as required by Sections 5205 and 6710, Revised Statutes, or when a cause is referred to a referee or special master, the statute requiring that he report his conclusions on the law and facts, only such judgment in such cases can be rendered as is warranted by the facts found; and facts not found are presumed not to exist. *Leach* v.

*Church,* 10 Ohio St., 148; *Jones* v. *Brown,* 11 Ohio St., 601; *Springer* v. *Avondale,* 35 Ohio St., 620; *McHenry* v. *Carson,* 41 Ohio St., 212; *Albright* v. *Hawk,* 52 Ohio St., 362.''

Section 5205, Revised Statutes, is now Section 11421-2, General Code. Therefore, if the existence of unappropriated or unencumbered money in the treasury was necessary to sustain the judgment, we must presume that there was no such money. No judgment can stand that is not sustained by the facts found.

In this situation the first question which presents itself—and the one which we think is decisive—is whether mandamus will lie against the City Auditor and Treasurer to require them to do the things which the relator seeks to compel them to do.

Mandamus is the appropriate remedy to compel the performance of ''An act which the law specially enjoins as a duty resulting from an office, trust, or station.'' Section 12283, General Code.

Were the drawing of these orders by the Auditor and the honoring of them by the Treasurer in 1933 to correct errors committed in 1929, 1930, 1931 and 1932 acts which the law specially enjoined upon them to do as Auditor and Treasurer, respectively? To answer this question it is not sufficient to point to errors of the past—to failures to perform duty in other years. Present duty alone is the criterion. Past derelictions, if any, are unimportant unless they give rise to a present duty. This present duty can only arise out of existing facts and law. A duty may have existed at some prior time. A change of facts may have terminated the duty. The person may have resigned, his term of office may have expired (25 Ohio Jurisprudence, 1000), or the means once at hand may have disappeared. The law may have been repealed or amended with the like result. In 18 Ruling Case Law, 117, it is said: ''The duty sought to be enforced must be a duty which still exists at the time when the ap-

plication for the writ is made." The office itself may have been abolished or the duties changed. Duty varies as the legal situation varies. In 18 Ruling Case Law, 118, it is said: "It is of the very essence of the proceeding as applied to public officers that there be some officer or officers in being *having the power and whose duty it is to perform the act."* See also *Barkley* v. *Levee Commrs.*, 93 U. S., 258, 23 L. Ed., 893; *United States* v. *Lamont,* 155 U. S., 303, 39 L. Ed., 160, 15 S. Ct., 97.

The result of the Ohio cases on the subject of the necessity of power to comply as a prerequisite to the issuance of the writ is summarized in 25 Ohio Jurisprudence, 1025, as follows:

"As a broad general rule, where it appears that the respondent is unable to comply with the order, or, as is sometimes said, the performance of the act is impossible, the courts will not issue a writ of mandamus. If it be no longer in the power of the defendant to perform the duty enjoined by law, or if, having failed to discharge it at the proper time, its present execution would no longer be consistent with the substantial right of other parties, the writ should not issue. This rule has been applied to public officers who have improperly diverted funds in their hands, or under their control, so that they are unable to comply with some duty with reference to the disposal of the funds.

"No doubt, a writ of mandamus should not be issued unless it appears that the thing commanded to be done is capable of being performed."

The trial court stated in his opinion that: "The general fund has therefore been enriched by these amounts," but no equivalent statement was incorporated in the finding of facts. It, of course, cannot be considered as a finding of fact. We mention it only in connection with the consideration of the question whether the Treasurer can be considered as still in possession of this money. Possibly during the year,

and so long as there remains in the fund which should have borne the burden, money to discharge that burden, it could be considered still in his possession, but "misplaced." On the theory that an intent to observe the law will be presumed, the appropriation and certification might be considered to have been a mistake, and the payment to have been from the appropriate fund, but improperly recorded. Or, as the City Council would have no power to devote money to a purpose unauthorized by law, it might be claimed to be analogous to tracing trust funds so long as a fund existed. But when the favored fund—the enriched fund—has entirely disappeared, to assert that there still remains a separate identity of the original subject-matter carries the theory beyond the point heretofore recognized.

The powers and duties of the City Auditor are defined by Section 4276, General Code, and by the city charter and ordinances.

The powers and duties of the City Treasurer are defined by Section 4293 *et seq.*, General Code, and by the city charter and ordinances.

Neither official, nor both acting together, has any power to make an appropriation of any money for any purpose. No such power has been conferred upon them. The appropriation—the specification of the use of the money—is made either by the terms of the law or by the governmental agency having the power to direct. That power resides in the City Council. The duty of the Auditor is to record the receipt and disbursement of public funds.

Of course if the Auditor and Treasurer, or either, should know at the time that the City Council had appropriated a fund for a purpose other than the one which the law had prescribed it should be used, the appropriation should be disregarded by them as being beyond the power of the City Council, and a nullity. But when the appropriation is within the lawful pur-

pose, the fact that the money was diverted without their knowledge does not show a failure of duty on their part. Nor does it in any case cast upon them a duty to change their records to conform to the unauthorized act of the administrative officer. Their duty under the law requires that they make the record conform to the appropriation, and that it be kept so. Nor, assuming a duty on their part, does the situation show any ability to correct the error in the application of the funds.

At the end of each year, it is true, the unencumbered balance of each appropriation reverts to the fund from which it was appropriated. Section 5625-32, General Code. The unused appropriations from the general fund revert to that fund, and the unused appropriations from the motor license and gasoline tax funds revert to them. The books of the City Auditor should show this reverter. But by Section 5625-29, General Code, the taxing authority, in the instance of a city the council, is required to pass an appropriation measure. As soon as that is done the auditor's duty requires him to make his books conform by breaking up the unappropriated general fund into the specific funds so appropriated. He has no discretion to refuse, and when he complies he has no discretion to divert anything from any fund to some other purpose by changing his entries or otherwise. We are not required to decide whether the Auditor could be required by mandamus to transfer from the unappropriated fund at the end of the year. The facts do not present that question.

The question which is presented is whether the Auditor can be compelled by mandamus to take sums from funds appropriated for specific purposes and apply them to some other purpose, in order to correct a misapplication of funds in a prior year. If he can be so compelled, should the court direct the specific fund from which it should be taken? Has the court any

power to decide which present purpose of Council shall be defeated to correct the error of former years? Or if the court has no power to make a specific direction, should it make a general order leaving it to the Auditor to comply as best he may, under the penalties of contempt in the event of failure? Has the Auditor the discretion to choose the fund from which he will take the money with which to comply? May he defeat any present purpose of Council in order to correct prior errors? It seems to us the obvious answer to these questions is that neither the court nor the Auditor has this power.

In this connection it must be borne in mind that what is sought by the relator is not the mere correction of book entries. That is only incidental. What is sought here is to require the City Auditor to make an actual redistribution of moneys under his control, and to issue warrants whereby the transfer of these amounts shall be made from funds to which they have been credited in accordance with the appropriation ordinance.

In the case of *Universal Church* v. *Trustees of Sec. 29, Columbia Township,* 6 Ohio, 445, 27 Am. Dec., 267, a writ of mandamus was sought to require the defendant to make an equal division of the rents and profits of certain lands, and the defense was that no part of said rents and profits remained in the hands of the defendants for distribution, and in that case the court denied the writ, holding:

"That inasmuch as the command of the mandamus could not act on the specific fund, no order could be awarded to act on any general fund within the control of the trustees."

The reasoning of the court in the case of *State, ex rel. Turney, Treas.,* v. *Staley,* 38 Ohio St., 259, is pertinent to this inquiry. In that case it was sought by a writ of mandamus to compel the County Treasurer to pay a certain amount to the State Treasurer, which

the County Treasurer had withheld, claiming he had paid the State Treasurer the amount that the County Auditor had certified to him. The County Auditor had improperly reduced the amount, under the assumption that mistakes existed which he had the right to correct. One of the defenses was that the County Treasurer had no fund in his possession with which to comply with the mandate of the writ in event it was issued. The court found that there were unappropriated funds in the Treasurer's hands and awarded the writ, but in discussing the subject at pages 265 and 266 the court said:

"No doubt, a writ of mandamus should not be issued unless it appears that the thing commanded to be done is capable of being performed. The question, therefore, whether the funds sought to be transferred from the county treasury to the state treasury, are, in fact, in the county treasury, *is material.* It appears plainly enough that these funds, before the semi-annual settlement in September, 1881, had been received into the county treasury, and we think it must be presumed that they remain there until the contrary is shown. In view of this presumption, the petition in this respect is not defective. If the issuance of the writ be resisted on the ground that the funds claimed are not in the treasury of the county, and under the control of the defendant, such state of facts must be shown by the defendant in his answer."

In the case at bar there is no express finding that there was unappropriated money in the treasury.

In the case of *People, ex rel. Atty. Genl.,* v. *Reis, Treas.,* 76 Cal., 269, 18 P., 309, it was sought by the attorney general to require by mandamus the City Treasurer and City Auditor of San Francisco to pay a certain sum to the State Treasurer, resulting from interest upon delinquent taxes due to the state. One of the contentions was that there was no fund in the

possession of the defendant with which to comply with the order. As stated on page 274 it appeared:

" 'That the said sums mentioned in the complaint for the various fiscal years therein specified were collected by the city and county officers as interest upon the state's portion of delinquent taxes, under section 3803 of the Political Code, and paid over to the treasurer of and into the treasury of the said city and county, and the general fund thereof; and was all paid out again by the treasurer of said city and county in the fiscal years when collected, to satisfy regularly audited demands upon said treasury, * * * and that at the time of the various demands and requests alleged in the plaintiff's petition, and each of them, and at the time of the commencement of this action, no part of said moneys so alleged to have been collected for interest was in the hands of said treasurer, or in the said treasury.' "

And in discussing the situation thus presented the court at page 274 says:

"It would be useless to compel either of these officers to do what is asked on behalf of the state: as to the auditor, because the treasurer would not be charged with any duty to pay again what has already been regularly paid away; and as to the treasurer, because he could not be compelled to pay the money from the treasury which he had already regularly disbursed, and he certainly should not be compelled to pay it out of his own funds. It is well settled that an officer cannot be compelled to pay a sum of money by mandate *unless the money is in his official custody,* legally subject to the payment of the demand made when the steps are initiated to enforce the payment of such demand by writ of mandate."

In the case of *Pippin et al., County Commrs.,* v. *State, ex rel. Town of Blountstown,* 73 Fla., 363, 74 So., 653, the court had before it a case in which the facts were that certain county commissioners under

the law had collected special taxes on property in the town of Blountstown, and expended all the money for county purposes. Under the law the town in which property was located upon which the tax was levied was entitled to one-half of the amount realized, and the writ of mandamus was sought to compel the county commissioners to pay an amount equal to one-half of the taxes of the city. The writ was denied, and the court quoting from its opinion in *Duval County* v. *City of Jacksonville*, 36 Fla., 196, 18 So., 339, 29 L. R. A., 416, said:

" 'A peremptory writ of mandamus will not usually issue commanding an officer to do what is not within his power to do, and though by putting it out of his power to perform a duty he may become liable in damages, still where he cannot perform the act, and this is clear to the court, mandamus will not be issued against him. This rule has been applied to public officers who have improperly diverted funds in their hands or under their control so that they are unable to comply with some duty in reference to their disposal.' "

Further, the court cites a list of authorities in support of this position, including *Universal Church* v. *Trustees of Sec. 29, Columbia Township*, 6 Ohio, 446, 27 Am. Dec., 267.

To the same effect are the cases of *Knight* v. *Thomas*, 93 Me., 494, 45 A., 499; *State, ex rel. Marr, Dist. Atty.*, v. *Otero*, 52 La. Ann., 1, 26 So., 812; *Deckman* v. *Village of Oak Harbor*, 10 C. C., 409, 6 C. D., 729, 3 O. D. (N. P.), 597; *State, ex rel. Ingerson*, v. *Barry, Clerk*, 14 Ohio St., 315; and *State, ex rel. Vail*, v. *Fulton, Secy. of State*, 97 Ohio St., 325, 120 N. E., 140.

Our conclusion is that the relator was not entitled to the relief sought, that the judgment of the Court of Common Pleas of Hamilton county should be reversed

and final judgment entered in this court for the plaintiffs in error.

*Judgment reversed.*

Ross, P. J., and HAMILTON, J., concur.