M. C. PIPPIN, AS CHAIRMAN, AND E. G. PRIDGEON, P. F. HALLEY, W. B. HOLMES AND H. C. RICHARDS, AS COUNTY COMMISSIONERS OF CALHOUN COUNTY, *Plaintiffs in Error,* v. THE STATE OF FLORIDA *ex rel.* TOWN OF BLOUNTSTOWN, A MUNICIPAL CORPORATION, *Defendant in Error.*

Opinion Filed February 15, 1917.

1. Section 850, General Statutes of 1906, provides "That one half of the amount realized for said special tax on property in incorporated cities and towns, shall be turned over to the municipal authorities of said cities and towns" and it is the duty of the county commissioners to comply with the law; but if they fail to do so, and expend all the money belonging to the special road and bridge fund in any year, mandamus will not lie to require them to pay from funds raised by taxation in a subsequent year, the money improperly withheld from the municipalities.

2. Cities and towns are entitled to one-half the amount raised by taxation under the statute authorizing the collection of a special road and bridge tax, on all property lying within their corporate limits, and where it is withheld by the county, the municipalities should make diligent effort to require the money to be turned over to them in accordance with the statute, and by their failure to do so they may be guilty of laches, which will bar relief by mandamus.

3. It is the duty of municipal authorities upon the failure or refusal of the county commissioners to turn over to them their proportion of the special road and bridge tax fund, to demand and require its payment within a reasonable time after the tax has been collected.

4. Where an official has put it out of his power to perform a duty, a peremptory writ of mandamus will not be issued against him; but this will not prevent the injured parties from pursuing their proper remedies, and in the case of money wrongfully expended, from prosecuting in due and seasonable time their actions for its restoration.

5. There is no rule by which the number of years which will bar relief by mandamus can be fixed. Each case must be determined by its own facts. "An apparent laches, unexplained, is the bar. It might take effect in a year."

Writ of Error to Circuit Court for Calhoun County; Cephas L. Wilson, Judge.

Judgment reversed.

*J. H. Finch* and *C. R. Warren,* for Relator;

*Paul Carter,* for Respondents.

BROWNE, C. J.—The town of Blountstown, a municipal corporation, sought by mandamus to compel the County Commissioners of Calhoun County to pay to it one-half of the taxes for road and bridge purposes, amounting to $792.60, levied upon and collected from property located in the town of Blountstown from the year 1904 to 1913, both inclusive. Petitioners allege that demand has been made on the County Commissioners to issue a warrant to it upon the Road and Bridge Fund of the county for said sum of $792.60, but the demand has been refused. That there is in the Road and Bridge Fund the sum of twelve thousand and thirty-five dollars and twenty-seven cents, but does not state what part, if any, of the said sum now in said fund was derived from taxes levied during the years 1904 to 1913.

The respondents moved to quash the alternative writ on the grounds: (1) That the writ was vague, indefinite, uncertain and insufficient; (2) that relator was in laches; (3) that the writ required respondents to do an unlawful act; (4) that the claim was barred by statute of limitations. The Circuit Judge denied the motion and relators filed their answer, which was demurred to, and demurrer sustained. They then filed an amended answer setting up the same defenses, and added one of waiver by the town, but as plaintiffs in error admit that they failed to prove this, it need not be considered.

The respondents admit that they collected $1,583.20 as Road and Bridge tax on property located within the corporate limits of Blountstown during the years 1904 to 1913 inclusive. They allege that no demand was

made on them during the years mentioned for one-half of the money so collected; that they spent more than $850.00 of the money so collected for the benefit of the roads and bridges within the corporate limits of the town during the years 1904 to 1913; that during said years the town accepted from the county, moneys, improvements and expenditures far exceeding the amount claimed; that by such acceptance it is estopped from claiming payment of such money; that all the money in the Road and Bridge Fund of the county for the years prior to 1912 has been expended as the law provides, on roads and bridges in the county, and that there remains in the Road and Bridge Fund only an unexpended balance of $32.50 for taxes collected for all the county; that the town is in laches; that the claim of the relator, if it has any, is barred by the statute requiring claims against counties to be presented within one year from maturity; that claim did not accrue within one year, two years, three years and four years respectively; that all the money in Road and Bridge Fund of county at time of issuance of writ had been apportioned under the "Budget System" provided for by Act of 1915, and that in the contingent fund of Road and Bridge Fund there is less than the amount claimed by the relator; that all money collected for Road and Bridge purposes prior to 1912 has been expended; that of the entire taxes collected in said town in 1913 for Road and Bridge purposes there remained on hand only $313.05, and that there was in the county treasury only $345.55 of all money collected by the county for Roads and Bridges for all the years of 1904 to 1913 inclusive, and that relators were entitled only to the sum of $172.77.

On motion of relators, the court struck all of paragraphs 3 to 25 inclusive, of the amended answer on the

ground that they contained matters of defense set up in original return to which a demurrer had been sustained; and the respondents having failed to prove the waiver set up in the 26th paragraph of the amended return, the peremptory writ was issued.

There is no question but that the County Commissioners of Calhoun County have spent more than half of the amount of money which should have been turned over to the town of Blountstown; but having done so, have they the right to take the money raised by taxation on property in the whole county, to pay this indebtedness to the town? All the money in the Road and Bridge Fund, except one half of that collected for taxes on property situated within the town of Blountstown, must be expended for the purposes for which it was levied, and for no other. The statute which provides for this special tax for roads and bridges, after authorizing the levy, provides: "And the money arising therefrom shall be paid into the county treasury as a special fund to be expended under the direction of the County Commissioners solely for the purpose of maintaining, working, repairing and keeping in good condition the public roads, bridges and river crossings of the county, and purchasing suitable tools, implements and materials, teams, wagons, camp outfits and stockades for the use and safe keeping of the convict force as may be found necessary in the proper carrying out of this work, and for the employment of such additional labor as may be deemed necessary: Provided, however, That one-half of the amount realized for said special tax on property in incorporated cities and towns shall be turned over to the municipal authorities of said cities and towns to be used in the repairing, working and improving

and laying out of the streets thereof as may be pre-
scribed by the ordinances of said cities and towns."

The statute further provides that before levying this
special tax "sixty days' notice must be given in one or
two newspapers published in the county of the intention
to make the levy and that if a majority of the registered
voters by petition oppose the levy, it shall not be made."
Sec. 850 Gen. Stats. of 1906, Florida Compiled Laws,
1914. By this publication the people of the county are
notified that all the money raised by the special tax levy,
except one-half of what is collected from property within
the corporate limits of cities and towns, will be expended
solely for roads, bridges and other purposes mentioned
in the statute, in that part of the county lying *outside*
the cities and towns. The provision of the statute, that
"if a majority of the registered voters by petition oppose
the levy it shall not be made," is in the nature of a
referendum vote, upon the proposed levy, and if a ma-
jority of the registered voters of the county do not
object to it, it is equivalent to an affirmative vote upon
the proposition submitted; but their silence cannot be
construed to mean that they gave assent to the applica-
tion of a considerable part of the money raised by taxa-
tion upon the properties without the corporate limits of
cities and towns, for a purpose foreign to the purposes
enumerated in the statute. The County Commissioners,
therefore, have no authority to use any of the money
raised by the levy of 1914 and 1915 for any purpose
not provided for in the statute. Their obligation to
pay to the cities and towns one-half of all the money
collected by taxes on property situated within their cor-
porate limits, is no greater than their obligation to ex-
pend all the residue on roads, bridges, etc., in that part
of the county lying outside such corporate limits. It

is contended, however, that they have not observed their obligation to turn over to the cities and towns their portion of the money raised during the years 1903 to 1913 inclusive, and therefore the county should be required to pay it out of the 1914 and 1915 taxes.   In substance, the proposition is this:   That the County Commissioners having misapplied some of the special tax funds raised during the years 1903 to 1913, they should be required by mandamus to misapply some of the funds raised for the years 1914 and 1915.   The mere statement of this proposition supplies its answer.   The decision of the court below was no doubt governed by the case of Hillsborough County v. State *ex rel.* City of St. Petersburg, 57 Fla. 50, 48 South. Rep. 976.   The facts in that case and the one under consideration are materially different.   In the St. Petersburg case there was a demurrer to the alternative writ, and when that was overruled, defendants failed to answer, and the peremptory writ was issued.   The only facts before the court in that case were those recited in the alternative writ, the truth of which was admitted by the demurrer.   The alternative writ alleged that the County Commissioners had declined to admit the claim upon the ground that they had spent the money, and it also alleged that there was in the treasury of the county a sum of money exceeding the claim of the city.   There was no sworn answer before the court that the money had been spent.   In the instant case, there is an answer by the respondents in which they state under oath that there was in this fund only $32.50 of the taxes collected prior to 1912, and $313.05 of the taxes collected in 1913, and that of the $11,000.00 then in the treasury, the entire amount except $345.55 was from taxes levied for the years 1914 and 1915.

In the case of County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339, a peremptory writ was granted by the Circuit Judge, which commanded the County Commissioners of Duval County to forthwith turn over to the City of Jacksonville $5,746.74, although the return showed that there was only $758.91 in the treasury to the credit of the Road and Bridge Fund, and this court in reversing the lower court, said: "The return distinctly alleges that the whole amount had been required and used for the purpose of keeping the county roads and bridges in good repair, except the sum of $758.91, the balance remaining in the hands of the county treasurer. According to the return of the County Commissioners, it is clearly shown that the county had expended all the road and bridge fund except the amount stated, and that the only sum received by the city authorities was $2,746.05. The county had expended largely the city's part of the road money, but the money, as is clearly shown, is not in the county treasury to be turned over, and the question arises, to what extent will the remedy of mandamus apply? * * * A peremptory writ of mandamus will not usually issue commanding an officer to do what is not within his power to do, and though by putting it out of his power to perform a duty he may become liable in damages, still where he cannot perform the act, and this is clear to the court, mandamus will not be issued against him. This rule has been applied to public officers who have improperly diverted funds in their hands or under their control so that they are unable to comply with some duty in reference to their disposal. Rice v. Walker, 44 Iowa, 458; Bates vs. Porter, 74 Cal. 224; Universal Church vs. Trustees of Columbia Township, 6 Ohio 446, S. C. 27 Am. Dec. 267; State *ex*

*rel.* Board of Freeholders vs. Township of Lacey, 42 N. J. L. 536; People *ex rel.* vs. Tremain, 20 Barb. 96; State *ex rel.* vs. City of New Orleans, 34 La. Ann. 469; Township Board of Education vs. Boyd, 58 Mo. 276. Under the showing made, we think the court should not have undertaken to compel the County Commissioners to turn over money that was not under their control, and which it was not in their power to do as officials of the county."

It is not in the power of the County Commissioners to turn over to the town of Blountstown any part of the Special Road and Bridge tax collected for the years 1914 and 1915, except one-half of that collected for taxes on property situated within the corporate limits of the town. All the rest of the money in that fund must be expended on that part of the county lying beyond the corporate limits of cities and towns, for the purposes provided for in the statute.

It is clear that the money in the Special Road and Bridge Fund derived from taxes for the years 1914 and 1915, is not available for the payment to the town of Blountstown for its proportion of the taxes levied and collected for the years from 1904 to 1913 inclusive.

Another question raised by respondents, which possesses merit, is that the relator is in laches. It is a well settled rule that an application for mandamus "must be made in proper time: i. e. it must not be delayed too long." Short on Mandamus, 227. "The court will refuse mandamus where there has been unreasonable delay in applying for it." Ibid. 250.

The rule of *"Vigilantibus, et non dormientibus jura subveniunt,"* applies to mandamus. It was the duty of the municipal authorities of Blountstown upon the failure of the County Commissioners to turn over to them its

proportion of the taxes, to demand and require its pay-
ment each year, or at least not to delay an unreasonable
time in requiring its payment.   Instead of being vigilant,
they slept while the county was spending their money, and
more, in road and bridge work within the corporate limits
of the town.   The return shows that all that the town was
entitled to for the years 1904 to 1913 inclusive, was
$792.60, and the county expended $850.00 directly for
improvements in the city.

In the case of Regina v. Trustees of Rochdale & Hali-
fax Turnpike Road, 12 Ad. & El. (N. S.) 447, an appli-
cation for mandamus was denied, and Mr. Justice COLE-
RIDGE said: "We have been asked what number of years
will bar an application of this kind.   It is not necessary
to fix any number.   An apparent laches, unexplained, is
the bar.   It might take effect in a year."

In the case of Rex v. Justices of Lancashire, 12 East.
366, Lord Chief Justice ELLENBOROUGH, in passing on
an application for mandamus in connection with the ex-
penditure of money for road repairing, said: "This is an
application to the discretion of the Court, to shift a bur-
then from these parties, on whom it has been innocently,
perhaps, but certainly negligently, fixed, and to put it
upon others who are also innocent of the charge.   And
though applications of this sort have been entertained;
yet that must be understood of such as were recently
made after the occasions which gave rise to them.   But,
what perverse justice it would be to grant such an appli-
cation after an interval of eight years, when a large pro-
portion of the inhabitants must have been changed.   Sup-
pose an action of assumpsit could have been brought in
such a case for the contributory shares of the other inhabi-
tants, the statute of limitations would have run upon it;
but if this application be granted, the money must be paid

under the rate. The length of time therefore which has elapsed is a sufficient answer to the application, without going more at large into the subject."

In the case of Ex parte Scott, 8 Dowl. Pr. Cas. 328, S. C. 4 Jur. 579, mandamus was prayed to the Church-wardens of the Parish of Lambeth, to pay Mr. Scott the arrears of his salary to which he was entitled by a certain local Act, for his services as Clergyman, which he had performed from 1833 to 1838. The application was to compel the Churchwardens to pay the salary due, or to make a rate for that purpose. The writ was refused, and Mr. Justice COLERIDGE said: "As to Mr. Scott, has there not been some laches? Here he is in the year 1840 seeking to compel the inhabitants of the Parish to pay what they ought to have paid in the year 1837." In these cases it was sought to have a rate or tax levied to pay obligations which should have been paid years before.

In the case of City of Sanford v. Orange County, 54 Fla. 577, 45 South. Rep. 479, a bill was filed in 1903 for an accounting and payment to the City of Sanford of one half the amount realized from the road and bridge taxes for the years 1893 to 1902 inclusive, under a provision of the Sanford Charter identical with the provisions of Section 850 General Statutes of 1906 under consid-eration. In that case this court said: "The city is in laches in asking for it, and if it has been used for road purposes, and is consequently not in fund, the County Commissioners cannot be required at this late day to ac-count for it to an agency to be used for roads and streets." It is true, that the court also said: "If there were any funds in the hands of the county, and the city had a clear right to their use, the proper remedy is man-damus, if duly applied for;" but there is a strong implica-tion from the context, that at such a late day—ten years

after the first year's taxes should have been turned over to the city—mandamus would have been refused on account of the laches of the city.

It follows from the foregoing that the judgment ordering the peremptory writ must be reversed, and it is so ordered.

TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.