105 So.2d 5 (1958)
The CITY OF MIAMI, a Florida municipal corporation, Appellant,
v.
G.H. CARTER et al., Appellees.
Supreme Court of Florida.
July 23, 1958.
Rehearing Denied October 1, 1958.
*7 George S. Okell, Sr., and Robert M. Haverfield, Miami, for appellant.
Cypen, Salmon & Cypen, Miami Beach, and Ben Shepard, Miami, for appellees.
O'CONNELL, Justice.
The City of Miami, appellant, hereinafter referred to as the City, was defendant in an action brought by the plaintiffs, employees of the Miami Fire Department, hereinafter referred to as the firemen. The complaint sought an accounting of funds received by the City, during the period extending from December 6, 1939 to June 5, 1952, from the proceeds of a one (1%) per cent tax on gross receipts of all premiums collected on fire and tornado insurance policies covering property within the City's municipal limits, pursuant to an ordinance of the City enacted under the authority of Chap. 19112, Laws of Fla. 1939.
The complaint alleged that in 1939 the legislature enacted Chapter 19112, supra, which is now and is hereinafter referred to as Chapter 175, Florida Statutes, F.S.A.; said chapter provided for the creation of a "Municipal firemen's pension fund" in the State Treasury and authorized certain cities, including Miami, to assess and impose on insurers insuring against loss by fire or tornado a tax amounting to 1% of the gross amount of receipts of premiums on such policies covering property within their corporate limits; said chapter required insurers to pay said tax to the State Treasurer who was required to pay such into a special "Municipal firemen's pension fund" and annually pay over to each city the net amount to which such city was entitled; said chapter provided that the sums thus received by a city were to be paid into a firemen's relief and pension fund or into its pension fund for firemen and policemen, where such latter fund existed; the Supreme Court, in Jackson v. McGrath, 1945, 155 Fla. 565, 20 So.2d 907, held that funds so received must be held and administered for the sole use and benefit of firemen members and their dependents; the City of Miami passed its Ordinance No. 2231 on December 6, 1939 assessing and imposing the 1% tax as provided; the City had continuously since that date received said tax, said funds being paid over to it in trust for its *8 firemen; prior to December 6, 1939 there existed in the City a pension system known as "the Pension and/or Retirement Fund for members of the Police and Fire Departments of the City of Miami"; on December 6, 1939, by Ordinance No. 2230 the City created "The Miami City Employees' Retirement System"; the former pension fund, "The Pension and/or Retirement Fund for Members of the Police and Fire Departments", ceased to exist upon the creation of the new retirement system and its assets were transferred to the new fund; the City had failed and refused to hold and administer, for the sole use and benefit of firemen members and their dependents, funds received by it under the provisions of Chapter 175 during the years 1940 through 1952, but, on the contrary, had paid all such funds into "The Miami City Employees' Retirement System" and in so doing deprived the plaintiffs of their property without due process of law; and that in a suit brought by certain firemen against the City the trial court had rendered its judgment adjudicating the disposition of all such monies received by the City since June 5, 1952, such judgment being affirmed by the Supreme Court in a per curiam decision without opinion, State ex rel. Sharpe v. City of Miami, Fla. 1955, 77 So.2d 806.
The complaint concluded with a prayer that an accounting be taken of the monies received commencing on the 6th day of December, 1939 and ending on the 4th day of June, 1952. Plaintiffs prayed that the City be decreed to pay the amount determined, together with interest thereon, into the "Miami City Employees' Retirement System", there to be held in a special fund and administered for the sole benefit of firemen members and their dependents, such benefits to be in addition to the benefits already provided for them under said retirement system.
The City's motion to dismiss was denied and it then answered. In the answer the City alleged that the pleader's interpretations of Jackson v. McGrath, supra, were mere conclusions of the pleader and denied that the subject funds had been paid over to the City in trust for its firemen; the liabilities of the old pension and/or retirement fund for members of the police and fire departments of the City exceeded its assets and said liabilities were assumed by the new retirement system; the firemen had received special benefits not received by general employees participating in the City's retirement system; the present retirement system replaced the old, defunct system of firemen and policemen; the method by which the tax monies were administered was approved by the Supreme Court in Voorhees v. City of Miami, 1940, 145 Fla. 402, 199 So. 313; since passage of Ordinance No. 2230 in 1939 and through 1951 the amount received by the retirement system from the 1% tax was $434,946 and the City had paid for the benefit of firemen that amount plus $1,119,075; the benefits the firemen had received and accepted under the retirement system included the 1% tax, said tax being an integral part of the firemen's benefits; and that the case referred to, State ex rel. Sharpe v. City of Miami, supra, was a class suit including the class that the firemen represent, and the issues raised in that case were identical to issues raised herein.
The City's answer stated that the firemen were not diligent in pursuing their remedies and were estopped from securing the relief sought. The City prayed that the complaint be dismissed.
The City's motion for summary judgment was denied and at the conclusion of the testimony the chancellor entered his decree for the firemen. The chancellor decreed that under the provisions of Chapter 19112, Laws of Florida, Acts of 1939, as interpreted by this Court in Jackson v. McGrath, supra, it was the duty of the City to pay the tax money into a separate fund within the Miami City Employees' Retirement System, there to be held and administered for the sole use and benefit of firemen members and their dependents. He found that the City had used said sums to reduce the contribution *9 to the retirement system which it was required to make and that, contrary to the City's contention, the firemen had never received any benefits over and above what they were entitled to receive under the retirement system created by Ordinance No. 2230. The chancellor specifically recited that the preponderance of the evidence showed that the firemen were not guilty of laches. He also rejected the contention that the matters at issue were res judicata, stating that his examination of the Voorhees and Sharpe cases convinced him the issues involved in the instant suit were not determined therein. He ordered the City to pay over the total proceeds from the tax, which he found to be $436,920.68, in lieu of the figure alleged in the City's answer, into a special fund within the Miami City Employees' Retirement System, there to be held and administered for the sole use and benefit of the firemen members who were members at any time during the period from December 6, 1939 to June 5, 1952, and their dependents. He decreed that the firemen were to receive the benefits of said special fund in addition to the benefits already provided for firemen members and their dependents under the retirement system. He also decreed that "no interest is allowed (on the $436,920.68) as the City of Miami honestly felt that they were handling the funds properly."
From this final decree the City appeals and the firemen file as a cross-assignment of error the chancellor's refusal to award interest.
The City raises four points on appeal. First, it contends that it has properly used the funds in question for the use and benefit of firemen and their dependents; second, it says that the decisions in the cases of Voorhees v. City of Miami, supra, and State ex rel. Sharpe v. City of Miami, supra, are res judicata on the issues of the instant case; third, that the plaintiffs were guilty of laches; and fourth, that the provisions of Sec. 175.25, F.S.A. provide that the municipalities shall be independent of each other in the enforcement and interpretation of the provision of Chapter 175, F.S.A. and therefore the decision of Jackson v. McGrath, supra, is not binding on the City of Miami.
We will consider the first and fourth points together.
While it is true that the Jackson v. McGrath case involved the City of Miami Beach and not the City of Miami, nevertheless, it is clear that the same basic question was involved in that case as in this, i.e. whether a city can use the proceeds of the tax authorized under Chapter 175, F.S.A. for the benefit of all the members of the city relief or pension fund, or must the funds be used exclusively for the benefit of firemen members and their dependents.
In the Jackson case [155 Fla. 565, 20 So.2d 909], the trial court held that such monies should be paid into the "General Employee Pension, Annuity and Retirement Fund of the City of Miami Beach" and used for the benefit of all the members thereof.
In reversing that holding this Court expressly interpreted and construed the terms of Chapter 175, F.S.A., saying, in 20 So.2d at page 909 et seq:
"It appears to us from a study of the applicable statutes that the monies received from the state comptroller may be lawfully placed and kept in the General Employee Pension, Annuity and Retirement Fund of the City of Miami Beach, but that they must be there held and administered for the sole use and benefit of firemen members and their dependents and not for all employees in the service of the city.
"* * * * * *
"* * * Nowhere in the controlling statute is it provided, or even remotely suggested or inferred, that employees other than firemen are to participate in these proceeds. Throughout the act it is manifestly clear that the purpose of the act is to provide a system of relief *10 for firemen and their dependents, and for no other class of employees."
The above statements, as well as others in the Jackson case, leave no doubt that the funds derived from the tax authorized under Chapter 175, F.S.A., must be held, administered and used for the sole use and benefit of firemen and their dependents. It is permissible to pay the funds into the general pension or retirement fund of the City but within that fund they must be held in a "firemen's relief and pension fund", a "city pension fund for firemen and policemen" or in a similar special fund.
In addition, this Court by affirming the Sharpe case, has reaffirmed the holding in Jackson v. McGrath.
In the Sharpe case, the trial court wrote an "opinion and order" followed later by a final judgment. The record in that case was introduced in evidence in the trial of the case now before us and the appendix attached to appellant's brief contains both the "opinion and order" and the final judgment rendered by the trial court therein.
In said opinion and order the trial court commented on the City's argument that no provision in Chapter 175, F.S.A., required the proceeds of the tax to be used exclusively for firemen and their dependents, saying:
"This argument is not without merit; however, it must yield to the construction of the Supreme Court of Florida, in Jackson v. McGrath, 155 Fla. 565, 20 So.2d 907. In that case the Supreme Court held that the proceeds of the tax authorized by Sections 175.01 et seq., Florida Statutes, F.S.A., could only be used by the City of Miami Beach for the exclusive use and benefit of firemen and their dependents. In the case at bar the City of Miami stands in the same position with respect to Section 175.01 et seq., Florida Statutes, F.S.A., as does the City of Miami Beach. There is, therefore, no doubt in the mind of the Court of the applicability of the doctrine of Jackson v. McGrath, supra, to the instant controversy." (Emphasis ours.)
In the final judgment, the trial court ordered that there be issued a peremptory writ of mandamus commanding the City to administer the funds collected under the provisions of the act solely and only for the benefit of the firemen and their dependents.
As above stated, this Court affirmed said final judgment by per curiam decision and thereby approved the trial court's construction and application of the holding in Jackson v. McGrath, supra.
The City's contention that Sec. 175.25, F.S.A., which provides that in the enforcement and interpretation of that act each municipality shall be independent of the other, makes inapplicable to it the holding of this Court in Jackson v. McGrath, supra, is untenable. Whatever said section may mean, it can not be construed to mean that each city may determine for itself whether it will or will not use the proceeds of the tax for the exclusive benefit of firemen and their dependents. All cities which levy the tax authorized therein must use it for the exclusive use of firemen and their dependents. A different ruling would authorize a city by ordinance to change the provisions of the statute.
Consequently, we must and do conclude that the chancellor was correct in determining that the City should have paid the proceeds of the tax into a separate fund within "The Miami City Employees' Retirement System" there to be held, administered and used for the exclusive benefit of firemen members and their dependents, and that the City did not do so during the period of time involved in this proceeding.
In support of its position that it has properly used the funds in question the City argues that, even though no separate, special fund was utilized, the tax monies have been used for the benefit of the firemen and *11 their dependents. It claims that the plaintiffs are receiving benefits in excess of those which could be provided by the proceeds of the 1% tax and point out that during the period involved the City has paid into the retirement system for the firemen's use over one million dollars in excess of the $436,920.68 collected from the tax. In view of this, says the City, it would be inequitable to require it to pay over to the firemen the sum of $436,920.68.
As summarized by the firemen in their brief, the special benefits which the City claims to be given the firemen, are: (1) assumption of the obligations of a defunct pension system for firemen and policemen which existed prior to enactment of the present system; (2) a lower retirement age for a special group of policemen and firemen; (3) a lower rate of contribution to the retirement system by policemen and firemen and a greater contribution by the City for firemen and policemen than made by it for other employees in the system.
The firemen deny that they receive special benefits under the system. They argue, and the record so shows, that they do not receive a greater pension than any other employee with equal service and pay scale.
As to the assumption of the liabilities of the old pension fund they point out that this was of benefit only to policemen and firemen not entitled to any benefits from the tax monies involved herein, i.e. only to those who were already on the rolls of the old system.
As to the lower retirement age for firemen they point out that this right is given only to a special small group of policemen and firemen who waived any rights to a return of their contributions to the system in event of termination of employment by the City before becoming eligible for retirement benefits. All other employees are entitled to a return of their contributions under such circumstances. We agree with the firemen that the lower retirement age for this special group of firemen and policemen is not a special benefit attributable to the use of the tax monies involved but is one purchased by the employees involved through waiver of the right to a return of their contributions.
As to the City's argument that the firemen enjoy a special benefit in that they contribute at a lesser rate than other employees, it is first to be noted that the record shows that firemen and policemen are treated in the same manner under the system. Secondly, the testimony of the City's consulting actuary explained that the lower rate for firemen (and policemen) was not because of use of the tax monies involved here, but because of the fact that firemen (and policemen) as a class have a shorter life expectancy than general employees and it is therefore unnecessary to build up as large a fund for their retirement benefits. He further explained that firemen (and policemen) cost the City more in contributions because there is less turnover in such personnel than in general employees. The result is that among general employee classifications with greater frequency of termination of employment before becoming entitled to retirement benefits, the contributions made by the City remain in the system, but the persons for whom the contributions were made do not, requiring lesser contributions by the City for the members who do remain and ultimately draw benefits.
In addition to the foregoing, the manner in which the City determined the amount of its contributions to the system indicates clearly that the tax monies involved here were not devoted to the exclusive benefit of the firemen as this Court held they must be in Jackson v. McGrath, supra. The City's actuarial consultant testified that he advised the City each year how much it must contribute to the system for all employees and that this amount was determined by ascertaining the gross amount needed and then subtracting the assets on hand or anticipated including the tax monies involved herein.
*12 Reasoned another way, it seems clear that should the proceeds of the tax monies involved here cease to be collected the benefit to the firemen, under the retirement system, would not be decreased nor would they be required to contribute any greater sum. However, the City would be affected in that it would have to make a greater contribution. This same reasoning applies to the period between 1940 and June 1952 and indicates conclusively that the proceeds of the tax monies were not used for the exclusive benefit of the firemen.
We are, then, of the opinion the record amply supports the final decree of the chancellor in the court below when he stated:
"* * * but the defendant did not pay said sums into a separate fund within said system to be held for the sole use and benefit of firemen members of the system and their dependents but, on the contrary, said sums were co-mingled and were used to reduce the contribution to said system which the defendant was required to make.
"The defendant contends that, notwithstanding such use of said funds, the firemen members of the system and their dependents derived the benefit of all of this money. A preponderance of the evidence, however, refutes this contention and shows that the firemen have never received any benefits over and above what they were entitled to receive under the provisions of defendant's Ordinance No. 2230 [defendant's retirement system]."
The City argues that no provision appears in Chapter 175, F.S.A., to the effect that the firemen should get the sole benefit of the insurance tax in addition to benefits they receive under its retirement system. This argument is of no avail as the Act does not make the firemen's right to the benefit of the tax contingent in any way upon the provisions of any other pension or retirement fund that may possibly include them in its operation.
Section 8 of Chapter 19112, now Chapter 175, F.S.A., provided that all funds received by a city under the provisions of the Act should be paid into its Firemen's Relief and Pension Fund or into its Pension Fund for Firemen and Policemen, where such latter fund existed. Section 26 provided that Section 8, and certain other sections, should be applicable in relation to all cities and towns having, or which might thereafter establish, a Firemen's Relief and Pension Fund, or a Pension Fund for Firemen and Policemen, "regardless of whether said city or town shall fall within the classification of Section 1 of this Act and have its Firemen's Relief and Pension Fund established under the provisions hereof or whether said City or Town's said pension fund shall exist under other general or special laws of the State."
Section 28 of the Act provided that nothing in the Act should be construed to repeal or amend any general or special laws theretofore passed pertaining to pension funds in certain cities, Miami included, unless specifically provided for within the Act.
We cannot interpret these provisions to mean that the firemen shall not receive the benefit of the tax monies in addition to benefits received from any other pension fund. The City cannot place upon the firemen the obligation to prove that the Act's intent was that they derive the benefit of the tax in addition to benefits derived from other pension or retirement systems or funds.
It may be that the effect of the conclusion that the firemen are entitled to the sole use and benefit of the tax monies, when considered along with the benefits derived by them under the City's retirement system, is to render the provisions of the retirement system overly liberal, too expensive to the City or discriminatory as to other City employees. If such is the effect *13 the City is of course at liberty to seek remedy through amendment to its retirement system, but it is not a matter to be settled by judicial decree.
We therefore must and do conclude that the tax monies involved herein were not used for the exclusive benefit of the firemen.
The City next contends that the issues involved in the case now before us were previously litigated and decided in the cases of Voorhees v. City of Miami, supra, and State ex rel. Sharpe v. City of Miami, supra, which cases involved the same parties as in this case, and therefore the parties are barred by the doctrines of res judicata or estoppel by judgment.
In the Voorhees case, decided by this Court in 1940, a fireman, in a class suit, sought to restrain the City of Miami from paying the proceeds of the tax monies involved herein into the retirement system created pursuant to Chapter 175, F.S.A., and from requiring an election by firemen and policemen as to the retirement classification to be taken by them. He also sought to have an accounting of the proceeds of certain tax levies made for benefit of the old system for the years 1937, 1938, and 1939 and to have the proceeds paid into the old system. He contended that the ordinance establishing the new system, the one now in effect, was invalid, and that the old system was still in existence.
This Court held the ordinance creating the present system to be valid, held the old system to be repealed, and therefore concluded that the question of paying the proceeds of the tax monies into a nonexistent fund or system was without merit.
Nowhere in that case do we find presented or decided the matter of how the proceeds of the tax monies involved herein should be held, used or administered within the present system. Consequently, the Voorhees case is not a bar to this case.
In the Sharpe case, discussed in part above, it was held that the City should hold, administer and use the tax monies involved herein for the exclusive benefit of the firemen. Certainly as to this point the City cannot argue that the Sharpe decision is against the position of the firemen in this suit. Rather it is in aid thereof.
However, the City argues that the trial court in the "opinion and order" entered in the Sharpe case decided that the firemen were guilty of laches and therefore were not entitled to an accounting for the tax monies for the period 1940 to June of 1952, when that suit was instituted.
In the "opinion and order" the trial court said:
"The Court, therefore, states that if it were of the opinion that relators [the firemen] were otherwise entitled to the relief here being discussed (all of the funds received by the City from the tax in question from 1940 to the commencement of this action), it would be of the further opinion, that relators are barred by laches with respect to this claim. See McNulty v. Blackburn, Fla., 42 So.2d 445; Pippin v. State ex rel. Town of Blountstown, supra [73 Fla. 363, 74 So. 653]; Tampa Water Works Company v. State ex rel. City of Tampa, 77 Fla. 705, 82 So. 230. * * *"
In the final judgment in the Sharpe case the trial judge stated that aside from the defense of laches, which he considered to have merit, he did not deem mandamus the proper remedy for an accounting of the complex nature which he felt would be involved.
It seems clear to us that the trial court did not decide that the firemen were barred from having an accounting of the proceeds of the tax monies for the years previous to 1952, but rather only expressed such as being his view if it were proper to decide the issue in a mandamus proceeding. It appears to us that he declined *14 to consider the matter of accounting for the previous years because he did not consider mandamus to be the proper cause of action in which to have an accounting. That he did not decide the issue of laches is buttressed by the fact that no testimony was taken by the trial court on that issue in the Sharpe case. Laches is primarily a question of fact to be determined from circumstances and conditions in each case.
Consequently, we conclude that the instant case is not barred by the Sharpe case.
The last question presented by the City involves the defense of laches.
As above stated the chancellor in his final decree specifically found that the preponderance of the evidence showed that the firemen were not guilty of laches. We have read all of the record and find sufficient evidence to support the chancellor on this point on the theory that delay in bringing action on a claim, if satisfactorily explained, will not preclude granting of relief, Cone v. Benjamin, 1946, 157 Fla. 800, 27 So.2d 90, where no injury, embarrassment or disadvantage has resulted to the person against whom relief is sought. Bethea v. Langford, Fla. 1950, 45 So.2d 496; Stephenson v. Stephenson, Fla. 1951, 52 So.2d 684; Dacus v. Blackwell, Fla. 1956, 90 So.2d 324.
The fact that the City will now have to pay, in lump sum, monies which it could have easier paid in annual installments is not sufficient injury, embarrassment or disadvantage to warrant invocation of the doctrine of laches. See Jumper Creek Drainage Dist. v. State ex rel. Davis, 1945, 155 Fla. 669, 21 So.2d 459; Smith v. City of Winter Haven, 1944, 154 Fla. 439, 18 So.2d 4.
We, therefore conclude that the firemen are not barred in this action by laches.
Finally, we are presented with the question by the firemen whether the lower court should have decreed that the City pay into the special fund for the firemen interest on the $436,920.68. The chancellor declined to do this, saying as reason therefor that the City had honestly felt they were handling the sums properly.
We note that when this cause was here before on appeal of the Sharpe case, the appellants, who were the firemen, argued that they were not guilty of laches. They asserted that one of the essential elements of that defense is that the person asserting it have been injured or prejudiced by the delay. The appellants, relators in that cause, stated in their brief:
"* * * The relators do not demand interest on the money thus wrongfully used and withheld, so actually the respondent City has been greatly benfited by having the free use of said insurance tax money."
Apparently the firemen on afterthought changed their minds, for in the instant case they do seek such interest, as they demanded such in their bill of complaint. They now contend that interest is not a penalty to be allowed or disallowed, based on the motives of the defendant, but is an award to compensate a person for the loss of use or detention of his money. This purported rule constitutes the firemen's sole argument on this question. The City did not choose to treat the question in its briefs.
The liability of municipalities for interest on claims against them is discussed in 38 Am.Jur., Municipal Corporations, Sec. 672; 17 McQuillin, Mun.Corps. Sec. 48.09 (3rd. ed. 1950); Annotation, 1950, 24 A.L.R.2d 928. Also see Broward County Port Authority v. Arundel Corp., 5 Cir., 1953, 206 F.2d 220, and Board of Trustees of Police Pension Fund of Glen Ellyn v. Village of Glen Ellyn, 1949, 337 Ill. App. 183, 85 N.E.2d 473.
The above authorities are divided on the question, but the weight of authority seems to be that a municipality is liable for payment of interest upon its obligation. This seems to be particularly so when the *15 municipality is acting in other than a governmental capacity.
However, the case before us was in equity for an accounting. In such cases in balancing the equities between the parties the chancellor is of necessity allowed some discretion. As was said by the Supreme Court of the United States in City of New Orleans v. Fisher, 1901, 180 U.S. 185, 198, 21 S.Ct. 347, 353, 45 L.Ed. 485, "where interest is sought by way of damages for delay, courts of equity exercise a certain discretion as to its allowance."
In this case no attempt has been made to show that the chancellor abused his discretion in refusing to allow interest on the sums of tax monies collected during the period involved and we do not, in our independent study of the record and applicable law, find that he did so.
In accordance with the views expressed above the decree appealed from is Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS and DREW, JJ., concur.