393 So.2d 586 (1981)
CITY OF MIAMI, a Florida Municipal Corporation, Appellant,
v.
Leonard L. GATES et al., Appellees.
No. 80-15.
District Court of Appeal of Florida, Third District.
January 20, 1981.
Rehearing Denied February 23, 1981.
*587 George F. Knox, Jr., City Atty. and Ronald J. Cohen, Asst. City Atty., Paul, Landy, Beiley & Harper and Lawrence R. Metsch and Robert M. Sondak, Miami, for appellant.
Paul & Thomson and Parker D. Thomson and Sanford L. Bohrer and Kenneth W. Lipman and Saturino E. Lucio, II, Miami, for appellees.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
The City of Miami seeks review of a non-final order granting summary judgment on liability against it on Counts III and IV of a class action complaint in equity brought on behalf of past and present fire and police employees who are beneficiaries of the city's pension fund.[1] We affirm as to Count IV, and affirm in part and reverse in part as to Count III.
The action below, which was commenced in 1977, concerned several distinct allegations that the city had improperly diverted ad valorem tax revenues which had been specifically authorized and assessed for the pension system. Count III involved the claim that, between 1958 and 1967, the city had used such funds for the payment of the judgments against it which were affirmed in City of Miami v. Carter, 105 So.2d 5 (Fla. 1958) and City of Miami v. Hall, 105 So.2d 499 (Fla. 3d DCA 1958).[2] Count IV contended that, within the preceding three years, the city had used these revenues to meet its statutory obligations to pay workmen's compensation benefits. After the denial of a motion to dismiss was affirmed in City of Miami v. Gates, 352 So.2d 542 (Fla. 3d DCA 1977),[3] cert. denied, 361 So.2d 831 (Fla. 1978), over the appellate contention that the action was barred by laches which appeared on the face of the complaint, the city raised the defense in its answer.[4] Subsequently, the plaintiffs moved for summary judgment on Counts III and IV, supported by evidentiary material as to the merits of the alleged misuse of funds. The trial judge granted the motion, stating in the order now under review:
1. By Ordinance No. 2230, the City of Miami established a pension system for its employees, such system presently having separate funds for its police and fire employees (the "Pension System") and its other employees.
2. During the fiscal years 1959 through 1976, inclusive, the City of Miami raised a portion of the money necessary to fund the pension System pursuant to authority granted the City by Chapter 1[8]689, Florida Laws, 1937 (the `Two Mill Tax Authorization Act') and Chapter 24696, Florida Laws, 1947 (the `Four Mill Tax Authorization Act').
3. In its annual budget ordinances for the fiscal years set forth above, of which *588 the Court takes judicial notice, the City of Miami stated certain millages were to be taxed for pension purposes.
4. The City did so tax and collect, such monies, but only a portion of such monies was paid into the Pension System, the remainder being used for other, non-pension related purposes.
5. Between the years 1959-1969 monies were deposited by the City in an account it entitled `Special Tax Levy Pension Fund,' City Account Number 219.03, but were not spent for pension purposes, and were instead spent for the purpose of paying legal judgments that had been rendered against the City in the cases of Carter v. City of Miami, Case No. 183911 (Dade Co. 1957) and Hall v. City of Miami, Case No. 194298-K (Dade Co. 1958).
6. Between the years 1973 and 1975 monies raised pursuant to the Four Mill Tax Authorization Act and deposited by the City in the `Special Tax Levy Pension Fund' account were not spent for pension purposes, but were spent for the purpose of reimbursing the City for payments it was obligated to make to City employees pursuant to Florida Workmen's Compensation Law.
As a matter of law, that money raised by the City for a specific purpose must be spent for that purpose only and thus money raised for pension purposes must be spent for pension purposes only. Therefore, the Court concludes money raised by the City for pension purposes but spent to pay legal judgments and Workmen's Compensation obligations were improperly diverted from the Pension System, into which such money should have been deposited.
IT IS THEREBY ORDERED that Plaintiff's Amended Motion for Summary Judgment is granted and summary judgment is hereby entered on liability in favor of Plaintiffs and against Defendant City of Miami with respect to the matters set forth in Counts III and IV of the Complaint as amended, the Court reserving jurisdiction with respect to the amount of damages to be paid into the Pension System.
The lower court's resolution of the issues treated in the order below was entirely correct. It is clear (a) that the taxes in question were explicitly assessed by the city for the benefit of the employees' pension fund in accordance with the specific authorization of the legislature,[5] see, Ex parte Simms, 40 Fla. 432, 25 So. 280 (1898); (b) that these tax funds therefore could be used for that precise purpose and for none other, and (c) that, insofar as they were employed to satisfy the pre-existing Carter and Hall judgments and to pay the city's workmen's compensation requirements, the proceeds were plainly and improperly not so used. Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313 (1940); see, City of Tampa v. Birdsong Motors, Inc., 261 So.2d 1 (Fla. 1972); City of Miami v. Carter, supra; City of Pensacola v. Fillingim, 46 So.2d 876 (Fla. 1950); City of Miami v. Kayfetz, 158 Fla. 758, 30 So.2d 521 (1947); Chamberlain v. City of Tampa, 40 Fla. 74, 23 So. 572 (1898). The city's contention as to the latter point is apparently that since its employees are the ultimate recipients of both classes of payments, funds earmarked for their independent pension fund may be utilized to make them. This claim amounts to the suggestion that, while one may not rob Peter to pay Paul, it is permissible to take from Paul himself in order to do so. It need hardly be stated that we thoroughly disagree with such a proposition.
The determination below that the city's use of the funds in question was improper is therefore affirmed. As to Count III, however, we reverse as to the laches defense raised in the answer. As we implied in our earlier decision in this case, *589 laches may indeed be asserted as a defense to an action such as this. City of Miami v. Carter, supra.[6] When the order was entered, however, the affirmative defense stood essentially unrebutted by any adequate factual showing.[7] The plaintiffs certainly did not carry their required burden affirmatively and conclusively to demonstrate the absence of a genuine issue which would negate the defense as a matter of law, so as to justify a summary judgment on the question. Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Moseley v. Turrell, 354 So.2d 121 (Fla. 3d DCA 1978), and cases cited. Therefore, as to Count III only,[8] the order below is reversed and the cause remanded for appropriate disposition of the laches issue.[9]
Affirmed in part, reversed in part.
NOTES
[1] Although the order did not dispose of all the liability issues in the case, the counts involved are separate and distinct from those which remain pending, see Mendez v. West Flagler Family Ass'n. Inc., 303 So.2d 1 (Fla. 1974) so as to permit review at this time under Fla.R. App.P. 9.130(a)(3)(C)(iv).
[2] Ironically enough, these cases involved a similar misuse by the city of excise taxes which had been legislatively authorized only for additional pension funds for policemen and firemen.
[3] We cited City of Miami v. Carter, supra, in which, at 105 So.2d 5, the supreme court upheld the chancellor's factual determination after trial that laches had not been established.
[4] None of the numerous other affirmative defenses is presently in issue. Moreover, it is conceded on this appeal that laches is not involved as to the claim contained in Count IV.
[5] Both of the pertinent statutes, Ch. 18689, Laws of Fla. (1937) and Ch. 24696, Laws of Fla. (1947) authorize the city to "establish a fund or funds for the relief or pension" of employees and grant it the right to raise taxes "for such purpose." Each of the city's annual taxing ordinances accordingly authorized a "tax [of a given millage] to provide for the requirements of the Pension Fund of the City."
[6] Accord, City of St. Petersburg v. Norris, 335 So.2d 333 (Fla.2d DCA 1976), cert. denied, 344 So.2d 325 (Fla. 1977). As Carter and Norris did implicitly, we expressly reject the appellees' contention that the fiduciary status of the city with respect to the use of tax monies, described in Oven v. Ausley, 106 Fla. 455, 143 So. 588 (1932), may be properly analogized to that of the trustee of an express trust, so as to preclude the applicability of the laches doctrine. Cf., Anderson v. Northrop, 30 Fla. 612, 12 So. 318 (1892).
[7] The only reference to the facts touching on this issue in the plaintiff's supporting affidavits was, at best, a tangential one.
[8] See note 4, supra.
[9] The trial judge has not yet considered the various factual and legal contentions concerning laches, particularly as to the validity and effect of § 95.11(6), Fla. Stat. (1977), which have been briefed and argued in this court. It is therefore inappropriate to engage in any extensive discussion of these issues. See, City of Coral Gables v. Puiggros, 376 So.2d 281 (Fla. 3d DCA 1979). We do, however, point out  by way of guidance for the further proceedings our opinion requires  that § 95.11(6) refers only to the "time provided for legal actions concerning the same subject matter" [e.s.] of the cause in question. If, as may well be the case, the present equitable proceeding is not equivalent to any action at law treated in other limitations provisions, § 95.11(6) would have no effect at all on the laches defense. Moreover, even if otherwise applicable, § 95.11(6) does not purport to affect that element of the laches doctrine which requires an unreasonable delay, without satisfactory explanation, in commencing the action after the plaintiff has been put on notice of his rights. See, 21 Fla.Jur. Limitations of Actions, §§ 95-96 (1958); but cf., Smith v. Branch, 391 So.2d 797 (Fla. 2d DCA 1980).