PER CURIAM.
The City of Miami appeals an order of the circuit court denying the City’s motion to enforce a final judgment and to hold appellees in contempt of court. The question presented is whether a 1985 class action settlement bars class members from making claims for reimbursement of benefits in reliance on Barragan v. City of Miami, 545 So.2d 252 (Fla.1989). We conclude that it does not and affirm the ruling of the trial court.
In 1977 the appellee plaintiffs[1] brought a class action against the City of Miami, alleging that
the city had improperly diverted ad valo-rem tax revenues which had been specifically authorized and assessed for the pension system. Count III involved the claim that, between 1958 and 1967, the city had used such funds for the payment of the judgments against it which were affirmed in City of Miami v. Carter, 105 So.2d 5 (Fla.1958) and City of Miami v. Hall, 105 So.2d 499 (Fla. 3d DCA 1958). Count IV contended that, within the preceding three years, the city had used these revenues to meet its statutory obligations to pay workmen’s compensation benefits.
City of Miami v. Gates, 393 So.2d 586, 587 (Fla. 3d DCA) (footnote omitted), review denied, 402 So.2d 608 (Fla.1981). This court affirmed a partial summary judgment in plaintiffs’ favor.
In 1985 the class action was settled. The settlement ended the objected-to funding practices. It called for a multi-year program for the City to fund its unfunded pension liabilities. It also made a number of changes in the administration of the City’s pension systems. After notice to the class of City of Miami employees,[2] the circuit court approved the settlement.
The present controversy arises primarily out of paragraph 8(B) of the final judgment, which bars certain litigation by class members. Paragraph 8 provides:
8. All members of the class, ... except those persons who have chosen to opt out of the class, are hereby severally barred and permanently enjoined from prosecuting ...:
B. Any class wide claim relating to employee pensions including claims arising from the application or interpretation of past or presently existing pension ordinances, where the facts giving rise to such claims are known to the member of the class seeking to make the claim as of the date of entry of this Final Judgment or, if that member of the class had exercised due diligence, would have been discovered as of such date;
[[Image here]]
(Emphasis added.)
At the time of the settlement a City ordinance had for many years provided that workers’ compensation benefits pay *751 able on account of disability or death would be offset against, and payable in lieu of, any benefits payable by the City retirement system on account of the same disability or death. § 40-212(N), Miami City Code. This ordinance was mandated by a provision in the workers’ compensation law, see § 440.09(4), Fla.Stat. (1971), beginning with its enactment in 1935. Ch. 17481, § 9, Laws of Fla.
In 1973 subsection 440.09(4), Fla.Stat. (1971), was repealed. Ch. 73-127, § 2, Laws of Fla. The Miami City Code provision was retained intact and the City continued to make the pension offsets called for thereby.
After 1973, the offset provision of the City ordinance was challenged on several occasions. This court concluded that the repeal of subsection 440.09(4) did not invalidate the City’s offset ordinance, and that the offset ordinance should be deemed to be within the scope of the City’s home rule powers. Hoffkins v. City of Miami, 339 So.2d 1145, 1146 (Fla. 3d DCA 1976), overruled sub nom. Barragan v. City of Miami, 545 So.2d 252 (Fla.1989). From that time through the date of the settlement, all published decisions of the appellate courts reached that same result. See Thorpe v. City of Miami, 356 So.2d 913 (Fla. 3d DCA), cert. denied, 361 So.2d 836 (Fla.1978); West v. City of Miami, 341 So.2d 999 (Fla. 3d DCA 1976), cert. denied, 355 So.2d 518 (Fla.1978).
In 1985 the instant class action was settled.
In 1987, the First District upheld the offset ordinance but certified the question of its validity to the Florida Supreme Court. City of Miami v. Barragan, 517 So.2d 99 (Fla. 1st DCA 1987), rev’d, 545 So.2d 252 (Fla.1989); see also Giordano v. City of Miami, 526 So.2d 737, 739 (Fla. 1st DCA 1988) (certifying question), rev’d, 545 So.2d 252 (Fla.1989).
In 1989 the Florida Supreme Court held that the City’s offset ordinance was invalid. Barragan v. City of Miami, 545 So.2d 252 (Fla.1989). The court disapproved this court’s decision to the contrary in Hoff-kins, as well as the First District’s leading case on the point, City of Miami v. Knight, 510 So.2d 1069 (Fla. 1st DCA), review denied, 518 So.2d 1276 (Fla.1987), overruled sub nom. Barragan v. City of Miami, 545 So.2d 252 (Fla.1989).
On August 1, 1989, as a result of Barra-gan, the City ceased making the pension offsets. The City declined, however, to reimburse pension recipients for offsets taken between 1973 and 1989. Approximately 60 claims have been submitted to the workers’ compensation tribunal, for reimbursement of pension offsets taken after the 1973 repeal of subsection 440.09(4).[3]
In these proceedings the City has asserted that the reimbursement claims are barred by paragraph 8(B) of the 1985 class action settlement. Those claims are now pending in various stages of the workers’ compensation proceedings.
Meanwhile, the City contends that it has a right to enjoin class members from proceeding with their reimbursement claims in the workers’ compensation tribunal. It will be recalled that paragraph 8(B) “barred and permanently enjoined” class members from prosecuting the claims described in that paragraph. Because the City believes that the reimbursement claims are covered by paragraph 8(B), it asserts that it is entitled to enjoin the class members from proceeding with their workers’ compensation claims. Accordingly, the City filed in the circuit court a Motion to Enforce Final Judgment and Hold Plaintiffs in Contempt of Court.
The trial court denied relief, holding in part:
(1) This court has jurisdiction to interpret and apply the decision of this court in Gates v. City of Miami.
(2) The decision in Gates v. City of Miami concerned the funding of the City of Miami’s pension plan.
*752 (3) Pension offsets for workers’ compensation benefits were neither discussed nor released by Gates’ class members.
Order, at 1-2.
We agree with the trial court. The central issues in the class action were the funding and administration of the pension system. Paragraph 8(B) of the Final Judgment barred class members from bringing “Any classwide claim relating to employee pensions including claims arising from the application or interpretation of past or presently existing pension ordinances, where the facts giving rise to such claims are known to the member of the class seeking to make the claim as of the date of entry of this Final Judgment or, if that member had exercised due diligence, would have been discovered as of such date....” (Emphasis added.)
By 1985 (when the settlement was approved) there was an unbroken line of authority, beginning with Hoffkins, which sustained the validity of the City’s pension offset. In the notice of settlement sent to class members, class counsel stated that “they are unaware of any other classwide claims aside from those involved in this lawsuit or its settlement.” The City did not contradict that statement and nowhere suggested that pension offsets were in any way involved in the litigation. We see no basis on which to say that the class knew, or should have discovered, the Barragan issue as of 1985, or that the Barragan issue was involved in the class litigation.[4]
Affirmed.[5]

. Leonard L. Gates, Frank K. Palmer, James W. Rogers, James C. Williams, John B. Cisco, John M. Dowda, Charles A. Salerno, and Gerald F. Beatty.

. During the litigation, the class was expanded. For purposes of the settlement, the class was defined as all contributing members and beneficiaries of the Miami City Employees’ Retirement System and the Miami City General Employees Retirement Plan.

. Barragan holds, in this context, that "a [workers’ compensation] deputy commissioner may properly increase the amount of workers’ compensation to offset illegal deductions made on the account of the payment of workers’ compensation benefits.” 545 So.2d at 253 (citations omitted).
The City estimates that the pending claims are 60 of a potential universe of 100.

. We leave aside the question whether individual workers’ compensation claims would in any way be deemed to be a “classwide claim” referred to in paragraph 8(B) of the Final Judgment.

. The City also relies on paragraph 8(C) of the Final Judgment, which bars claims "as to how average final compensation has been calculated ... for purposes of paying employee pen-sions_” as of certain dates. The Notice of Proposed Settlement discloses that certain assertions had been made "concerning the calculation of average final compensation," Notice at 15, including compensation for work performed on City holidays. The Notice indicated that the class settlement would bar some, but not all, claims "challenging the items excluded from average final compensation.... ” Id. As we view the record, the issue described in paragraph 8(C) is one of computation of final average compensation, a matter which is unrelated to the Barragan offset issue.