R. R. JACKSON and I. S. PEOPLES, et al., v. ROBERT McGRATH and C. W. MAUCH, et al., and E. D. CARPENTER and W. C. WICHMAN, et al.

20 So. (2nd) 907            January Term, 1945
February 16, 1945            Division B
Rehearing denied March 5, 1945

566

*Dunn & Wilson,* for appellants.
*Daniel P. Galen,* for appellees.

SEBRING, J.:

Chapter 18691, Laws of Florida, 1937, authorizes the City of Miami Beach to establish a pension, annuity and retirement system for its officers and employees. By virtue of the authority conferred by the statute the City of Miami Beach, on December 3, 1937, enacted ordinance No. 498 creating and establishing such a system of pensions and other relief benefits for employees in the service of said City, the system to become effective as of March 1, 1938. On August 7, 1939, the City of Miami Beach adopted ordinance No. 558 assessing and imposing an excise or license tax on all insurance companies insuring property in the City against loss or damage by fire or tornado, the ordinance prescribing that the tax was "to be payable and collected in the manner provided for by Chapter 19112, Laws of Florida, Acts of 1939, providing for the creation and administration of a Firemen's Relief and Pension Fund in certain cities and towns. Contained in the ordinance was the provision that "all moneys derived from the taxes imposed by this ordinance is hereby appropriated to the Firemen's Relief and Pension Fund of the City of Miami Beach, which shall be administered in accordance with the provisions of Chapter 19112, Laws of Florida, Acts of 1939. . . ." Thereafter, the issuance companies affected by

the ordinance paid into the treasury of the State of Florida, in pursuance of Sec. 6, Chapter 19112, supra, the amounts of such excise or license taxes duly assessed against them.

During the years 1940, 1941 and 1942 the comptroller of the State of Florida issued his warrant to the City of Miami Beach in the sum of $14,326.07, drawn on the State treasurer for the full amount of money then within the State treasury in the Municipal Firemen's Pension Fund to the credit of the City of Miami Beach as the net proceeds of the excise or license taxes paid by the insurance companies to the State treasurer, as State insurance commissioner, for the benefit of the Firemen's Relief and Pension Fund of the City of Miami Beach, pursuant to ordinance No. 558 adopted by the City on August 7, 1939. After the City of Miami Beach had received the money a dispute arose between the members of the fire department and the other employees of the City as to the proper disposition to be made of such proceeds; it being contended by the members of the Miami Beach fire department that by the terms of the statute authorizing the imposition and collection of such excise or license taxes (Chapter 19112, Laws of Florida, 1939,; ch. 175 Florida Statutes, 1941) the money received from the State Municipal Firemen's Pension Fund is payable to firemen and their dependents only, and not to all employees of the city who are entitled or eligible to receive benefits under the General Employee Pension Annuity and Retirement Fund of the City of Miami Beach established by ordinance No. 498.

Being a mere stakeholder of the fund, without direct pecuniary interest in the controversy, the City of Miami Beach filed its bill of complaint in the Circuit Court of Dade County seeking to interplead all classes of interested city employees in order that Chapter 19112, Laws of Florida, 1939, so far as its provisions affected Miami Beach, and its employees, might be judicially interpreted and the monies from the State Municipal Firemen's Pension Fund properly administered in accordance with law. All classes of interested persons became parties to the suit and filed answers. At the conclusion of the trial the court entered its final decree adjudicating that "the money formerly held by the City of

Miami Beach, now in the registry of the court, in the sum of $14,326.07, which accrued by virtue of Chapter 19112, Laws of Florida, 1939, and ordinance No. 558 of the City of Miami Beach, is payable into the General Employee Pension Annuity and Retirement Fund of Miami Beach, Florida, created by virtue of Chapter 18691, Laws of Florida, Acts 1937, by ordinance of said City approved by the voters in Miami Beach, Florida, January 18, 1938, and that all sums now on hand and all future sums which the City of Miami Beach, Florida, shall receive by virtue of Chapter 19112, Laws of Florida, 1939, and ordinance No. 558 of the City of Miami Beach, Florida, shall be payable into the General Employee Pension Annuity and Retirement Fund of Miami Beach, Florida, for the benefit of all its members and all such sums shall be considered part of the General Fund of the General Employee Pension Annuity and Retirement Fund of the City of Miami Beach, Florida, for the benefit of all its members..''

The members of the Fire Department of the City of Miami Beach have taken an appeal from the final decree, and have presented two main questions for decision: (1) May the monies paid over to the City of Miami Beach by the State comptroller from the "Municipal Firemen's Pension Fund" created by Sec. 7, ch. 19112, Laws of Florida, 1937, be lawfully placed and kept in the General Employee Pension, Annuity and Retirement Fund of the City of Miami Beach by ordinance No. 558, or must the City of Miami Beach create a separate "Firemen's Relief and Pension Fund," or a "City Pension Fund for Firemen and Policemen" for the receipt and disposition of such monies? (2) May the monies derived from the State Municipal Firemen's Pension Fund be used for the payment of pensions and other benefits to all city employees who are members of such pension system, or must it be held and administered solely for the use and benefit of members of the City Fire Department and their dependents?

It appears to us from a study of the applicable statutes that the monies received from the State comptroller may be lawfully placed and kept in the General Employee Pension, Annuity and Retirement Fund of the City of Miami Beach, but that they must be there held and administered for the

sole use and benefit of firemen members and their dependents and not for all employees in the service of the City.

As we view the effect of Chapter 19112, Laws of Florida, 1939 (Chapter 175 Florida Statutes, 1941), this controlling statute creates a Firemen's Relief and Pension Fund in such incorporated cities or towns in the State of Florida as have a regularly organized fire department owning and using fire apparatus and equipment of a value exceeding $5000.00 for the extinguishment of fires, and which do not have at the time of passage of the Act a similar relief and pension fund. See Sec. 175.01 Florida Statutes, 1941. By the terms of the statute all cities and towns in which a Firemen's Relief and Pension Fund is thus created, as well as such other cities and towns as have at the effective date of the Act a lawfully established Firemen's Relief and Pension Fund, or a city pension fund for firemen and policemen (including Jacksonville, Miami, Tampa, Pensacola, St. Petersburg and Miami Beach) are given authority to proceed by ordinance to assess and impose on every insurance company, corporation or other insurer engaged in the business of insuring against loss or damage by fire or tornado, an excise or liecnse tax on all premiums collected on fire and tornado insurance policies covering property within the corporate limits of such municipalities, respectively. See Sec. 175.05 Florida Statutes, 1941. After such an ordinance has been passed and a certified copy thereof has been filed with the comptroller and with the treasurer of the State of Florida, such insurers are required to pay to the State treasurer as insurance commissioner, annually, the amount of excise or license tax due to each such municipality under the terms of each such ordinance. See Sec. 175.06, Florida Statutes, 1941.

Such taxes collected by the State treasurer for each such city or town are required to be kept by the treasurer, as insurance commissioner, in a separate account, and, after deduction of the necessary expenses incurred in carrying out the provisions of the Act, are to be paid into a special fund in the State treasury to be known as the "Municipal Firemen's Pension Fund." Each year the State comptroller is required to draw his warrant on the State treasurer for the full net

amount of money then within the State treasury in the "Municipal Firemen's Pension Fund" to the credit of each city or town entitled to the same and to pay it over to each such municipality. Sec. 175.07 Florida Statutes, 1941. Upon receipt of such monies from the State treasury, the city or town involved is required to pay it immediately into its Firemen's Relief and Pension Fund, or into its Pension Fund for Firemen and Policemen, where such latter fund exists. Sec. 175.08 Florida Statutes, 1941.

As has been stated, Section 5 of the statute authorizes all incorporated cities or towns classified in Section 1 of the Act, and all cities or towns having at the time of the passage of the Act a firemen's relief and pension fund, or a city pension fund for firemen and policemen, including the cities of Jacksonville, Miami, Tampa, Pensacola, St. Petersburg and Miami Beach, to assess and impose a license or excise tax on insurance companies writing fire and tornado insurance on property in the municipalities, for the purpose of creating or maintaining a pension or relief fund for certain municipal employees. The City of Miami Beach is expressly stated to be one of the incorporated municipalities of the State upon which this power to impose the tax is conferred. We think without doubt that in the passage of the statute the Legislature thus took cognizance of the existence of the general pension, annuity and retirement system of the City of Miami Beach which had been in operation under authority of ordinance No. 498 since March 1, 1938, and intended that such system should become the agency through which funds derived by the City from the State Municipal Firemen's Pension Fund, maintained by the State treasurer as insurance commissioner, should be administered to such employees as might become lawfully entitled thereto. The chancellor's finding in his final decree that the funds received by the City of Miami Beach from the State comptroller should be paid into the "General Employee Pension Annuity and Retirement Fund of Miami Beach, Florida," was therefore correct.

But we cannot agree with the chancellor's findings that, when once paid into the General Employee Pension Annuity and Retirement Fund of Miami Beach, such monies thereafter

are to be administered by the trustees of that fund for the use and benefit of *all* member employees in the service of the City of Miami Beach. Chapter 19112, supra, by express language creates a special fund to be used exclusively for the purposes provided in the statute. Sec. 175.01 Florida Statutes, 1941. The exclusive purposes for which the fund is created by the statute, and for which the proceeds must be used, are: to provide pensions for certain regularly employed, appointed and enrolled firemen who have attained a certain age and length of service in a municipal fire department (Sec. 175.11 Florida Statutes, 1941); to provide accident or health benefits to paid or volunteer firemen who receive total and permanent disability in the performance of duty, or who suffer temporary sickness or disability caused or sustained while in the discharge of duty, Sec. 175.16-175.17 Florida Statutes, 1941; to provide benefits to widows and minor children of firemen who are killed or die from injuries received in service, Sec. 175.13 Florida Statutes, 1941; to provide benefits to widows and minor children of deceased pensioners, Sec. 175.12 Florida Statutes, 1941; and to provide funeral expenses in the event of death of a pensioner, or of a volunteer or paid fireman regularly acting as such, Sec. 175.18 Florida Statutes, 1941. We think it clearly contemplated by the statute that upon receipt of monies from the State comptroller out of the State Municipal Firemen's Pension Fund, such monies are to be kept and administered by each municipality receiving the same for these exclusive purposes, and for such purposes only. Nowhere in the controlling statute is it provided, or even remotely suggested or inferred, that employees other than firemen are to participate in these proceeds. Throughout the Act it is manifestly clear that the purpose of the Act is to provide a system of relief for firemen and their dependents, and for no other class of employees.

As will appear by reference to ordinance No. 558, adopted by the City of Miami Beach on August 7, 1939, the City imposed an excise or license tax on certain insurance companies writing fire and tornado insurance in the City of Miami Beach for the express purpose of providing a fund for such class of employees. The City passed such ordinance by virtue of

the authority granted such municipality by the terms of Chapter 19112, supra. By the express terms of the ordinance it was provided that the monies derived from the tax imposed was appropriated to the Firemen's Relief and Pension Fund of the City, and the ordinance required that the funds as collected should be administered in accordance with the provisions of Chapter 19112, Laws of Florida, 1939. We hold, therefore, that so much of the final decree as adjudicated that the proceeds derived from the State Municipal Firemen's Pension Fund is to be held and administered for the benefit of all member employees in the service of the City of Miami Beach must be reversed; for in this respect the decree is erroneous and should be modified to provide that the trustees of the General Employee Pension Annuity and Retirement Fund of Miami Beach, Florida, shall hold the proceeds derived from the State treasury in a "firemen's relief and pension fund," a "city pension fund for firemen and policemen," or similar or like fund, now in existence or created in the present pension and retirement system of the City, to be there held and administered in accordance with the general provisions of the present pension system but for the exclusive use and benefit of such members of such system as are firemen, and their dependents.

The decree appealed from is affirmed in part and reversed in part.

It is so ordered.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.