RAWLS, JOHN S, Associate Judge.
Six retired police officers of the City of Tampa brought this class suit requesting construction and determination of the laws and ordinances authorizing, establishing and financing their pension system; seeking an accounting for moneys received pursuant to Chapter 185, Florida Statutes, F.S.A.; and requesting a decree that the funds derived from Chapter 185 be used to provide benefits to policemen and their dependents in addition to those benefits received under the pension system established pursuant to a 1941 Special Act, as amended.
*529 Chapter 21590, Laws of Florida, Acts of 1941, created the City Pension Fund for Firemen and Policemen in the City of Tampa, and pursuant to this act the pension plan in question was established. This plan required participating policemen and firemen to contribute 2% of their wages and required the City to levy a one mill property tax to be paid into the fund until such time as the fund reserve reached $500,000. Thereafter the City was required to contribute ad valorem taxes which together with other revenues would be sufficient to maintain the fund balance at the $500,000. The City was authorized to levy a tax not exceeding two mills and to use other available funds.
This pension system is an elective one solely for qualified firemen and policemen, and those not electing to participate therein are covered by a general city employees’ retirement system. Each member of the firemen’s and policemen’s system executed an individual contract with the City setting forth the duties, benefits and liabilities of each party. To satisfy its obligations under the 1956 contracts, the City of Tampa continued, as it had in the past, to levy at least a one mill ad valorem tax until 1960. Although neither the employee contribution rate nor the city tax for the firemen’s and policemen’s pension fund had ever been based upon the actuarial soundness of the program, the City had adopted a policy of varying its property tax contribution so that the fund balance at the end of each year showed a gradual increase. In accordance with this policy and because the 1959 fund balance was $1,427,-077.33, the City contributions in 1960, 1961 and 1962 were materially decreased below the revenue which would be produced by a one mill levy.
From the inception of the program there has been deposited into the pension fund the proceeds from a 1% tax on fire insurance policy premiums as authorized by Chapter 175, Florida Statutes, F.S.A., for financing pension plans for the exclusive benefit of municipal firemen. In addition the fund has been financed by employee contributions and a one mill ad valorem city tax levy. In 1953 the City adopted ordinance 1571-A which imposed a 1% tax on casualty insurance premiums as authorized by the 1953 legislature in Chapter 185, Florida Statutes, F.S.A., for the exclusive benefit of policemen. Thereafter the proceeds from the casualty insurance tax were also deposited in the instant pension fund. Even with this additional source of revenue it was not until 1956 that the pension fund reserve reached the minimum $500,000 balance required. In that same year the city increased its ad valorem tax levy and the pension contracts were revised to provide substantially greater benefits at an increased employee contribution rate.
Appellants take the position that they are entitled to: (1) benefits provided by their respective contracts with the City, and (2) benefits accruing by reason of the City’s imposition of the 1% premium tax on casualty insurance policies as authorized by Chapter 185. They reason that the City was contractually liable to each of them irrespective of the passage or non-passage of Chapter 185 and that by the terms of the statute the City is required to grant to them additional benefits beyond their existing contractual rights. Both parties in construing Chapter 185 rely primarily upon two cases in support of their respective positions. Each of these cases dealt with the Firemen’s Pension Fund as authorized by Chapter 175; however, it is obvious that Chapter 185 is patterned after Chapter 175 and those decisions are controlling in this cause.
In Jackson v. McGrath,[1] the Supreme Court of Florida considered the utilization by the City of Miami Beach of the proceeds of funds generated by Chapter 175. The Supreme Court affirmed that portion of the chancellor’s final decree approving *530 the depositing of such funds in the General Employee Pension, Annuity and Retirement Fund of Miami Beach, but reversed that portion of the decree holding that the proceeds of the funds could be used for the benefit of all City employees. In so holding the Court stated:
“It appears to us from a study of the applicable statutes that the monies received from the state comptroller may be lawfully placed and kept in the General Employee Pension, Annuity and Retirement Fund of the City of Miami Beach, but that they must be there held and administered for the sole use and benefit of firemen members and their dependents and not for all employees in the service of the city.”
Thus, in this first construction of Chapter 175, the Supreme Court clearly held that the funds must be utilized exclusively for the purposes set out in the chapter, the same being for the exclusive benefit of firemen.
Basically, the same complaint was lodged by the City of Miami firemen in City of Miami v. Carter.[2] There, in an exhaustive opinion, the author, Justice O’Connell, analyzed in detail the purposes, intent and constitutionality of Chapter 175 and the Supreme Court’s opinion in the Jackson case. The City of Miami imposed the tax authorized by Chapter 175 and then utilized the funds thus derived to reduce the City’s contribution to the Miami City Employees’ Retirement System. In holding that the commingling of said funds were unlawful, the Court stated:
" * * * jj. ¡s permissible to pay the funds into the general pension or retirement fund of the City but within that fund they must be held in a ‘firemen’s relief and pension fund’, a ‘city pension fund for firemen and policemen’ or in a similar special fund.
* * * ❖ * *
“Consequently, we must and do conclude that the chancellor was correct in determining that the City should have paid the proceeds of the tax into a separate fund within ‘The Miami City Employees’ Retirement System’ there to be held, administered and used for the exclusive benefit of firemen members and their dependents
Therefore, it is apparent that the Supreme Court in construing Chapter 175 has found that a City which sees fit to levy the tax so authorized by Chapter 175 or Chapter 185 must:
1. Deposit the proceeds of such tax in a “firemen’s relief and pension fund”, a “city pension fund for firemen and policemen” or in a similar special fund.
2. Use the proceeds of the tax for the exclusive use of firemen [or policemen] and their dependents.
In the instant case the funds admittedly were deposited in the police and firemen’s pension fund which is a separate and distinct pension fund from that of the general employees of the City of Tampa, thus the first requirement of the Jackson and Carter cases has been met. As to the second requirement we note that nothing contained in Chapter 185 requires the city to establish two pension plans for policemen; to the contrary, it contemplates the utilization of any existing plan which meets certain standards set by the provisions of said statute.[3] The able chancellor in arriving at his conclusions of law held:
“In this court’s opinion, Chapter 185, Florida Statutes, clearly permits a municipality to set up its own retirement plan for policemen. When a municipality has a policemen’s retirement plan, such as that created and administered by the City of Tampa and which meets the standard set forth in the *531 enabling act (Section 185.35), the income from the taxes levied on insurance premiums under Chapter 185, Florida Statutes, may be placed by the municipality in its existing pension fund for the sole and exclusive use of their policemen or it may use said funds to pay extra benefits to policemen. The requirement of the section is that only the policemen will receive the benefits to be derived from such tax funds.
“The court sees no requirement in the statute that would prevent monies derived from Chapter 185, Florida Statutes, from being kept in a general or joint fund for firemen and policemen, providing proper control accounts are kept and maintained so that adequate separation or identification of the funds for the benefit of the policemen is maintained for the purposes enumerated in the act.
“The funds, therefore, must be segregated for the purposes of the act or proper control accounts must be kept and maintained so that such funds will at all times be available for the benefits intended. It appears that while the funds in the instant case were not segregated from other funds in the pension fund for firemen and policemen, nevertheless they were subject to a proper accounting designed to maintain a compliance with the enabling act in this regard, preventing the use of said funds for other than the pensions of the policemen entitled thereto. It is the duty of the municipality, when it elects to receive the benefits of the premium taxes provided by Chapter 185, Florida Statutes, to comply therewith, and it is the court’s opinion that the City of Tampa has substantially complied to perfect its election under the act.
“In other words, the statutes require that the city shall hold the proceeds involved derived from the State Treasury in a fund now in existence or created in the present pension and retirement system of the city to be there held and administered in accordance with the general provisions of the present pension system for the exclusive use and benefit of such members of the system as are policemen, and their dependents. Once more, the important requirement is that the city’s pension fund plan for policemen complies with the standard set forth in Section 185.35, Florida Statutes, and it is the court’s belief that the City of Tampa has adequately met this prerequisite and the other necessary requirements for legal and proper utilization of the tax funds in the adoption of proper ordinances, the entry of proper contracts with beneficiaries and in its accounting and administration of the funds for the benefit of policemen.”
The above quoted recitations are amply supported by the record and satisfy the second requirement of the Jackson and Carter cases.
Lastly, appellants insist that the contractual responsibility of the City has been reduced by reason of its utilization of such funds as herein outlined and, therefore, Chapter 185 has benefited the City rather than the policemen, the apparent beneficiaries contemplated by the legislature. The contract clearly provides that the city was required to build up this fund until a reserve of $500,000 was established and to maintain such a reserve; this the City has admittedly done. The contract further provided that “ * * * thereafter such sum of money shall be raised annually by ad valorem taxes, which together with the other revenues provided by this or any other law, will be sufficient to maintain said fund at an amount of not less than $500,000.” The City by “other law” levied the 1% premium tax authorized by Chapter 185 and earmarked the proceeds of same to the special “firemen and policemen’s retirement fund.” We find nothing in the contract or Chapter 185 requiring *532 the City to pay any special benefits from the proceeds derived from a levy under said chapter other than those now available under the existing contractual pension plan.
Affirmed.
ALLEN, Acting C. J., and SHANNON, J., concur.

. Jackson v. McGrath, 1945, 155 Fla. 565, 20 So.2d 907.

. City of Miami v. Carter, Fla.1958, 105 So.2d 5, 10.

. Section 185.35, Florida Statutes, F.S.A.