ERVIN, Justice
(dissenting).
We have for consideration a petition for writ of certiorari seeking review of a decision of the District Court of Appeal, 2nd District, in the case of DeWitt C. Bailey, et al., v. City of Tampa, et al., 163 So.2d 528 (Fla.App.2nd).
The petitioners, DeWitt C. Bailey, Chauncey K. Haynes, Hampton V. Murrell, Rozwe.ll E. Kenna, Louis Stewart and Newell N. Wright, are retired police officers of the City of Tampa and members of the Police and Fire Pension Fund of the City of Tampa. They filed complaint for declaratory decree in the Circuit Court for Hillsborough County to determine their rights to participate in the benefits of F.S. Chapter 185, F.S.A., the general law creating the state’s Municipal Police Officers’ Retirement Fund. The City and other officials of the City were named as defendants in the suit, and filed their answer to the Bill of Complaint.
The chancellor upon final hearing dismissed the Bill of Complaint and upon appeal the District Court of Appeal, 2nd, affirmed.
Chapter 21590, Laws of Florida, Special Acts 1941, provided for the creation of the City Pension Fund for Firemen and Policemen in the City of Tampa. Twelve years subsequent to the enactment of Chapter 21590, the Legislature passed Chapter 28230, Laws of Florida 1953, a general law. As amended, it appears in the Florida Statutes as Chapter 185 and created the state’s Municipal Police Officers’ Retirement Trust Fund.
Chapter 21590 provided for the levy of one mill upon all the taxable property in the city and an additional mill levy to meet the annual requirements of said firemen and policemen pension fund, until the proceeds derived from said levies, taken together with other revenues provided by said chapter or any other law, had accumulated a reserve in the fund of $500,000, after which the City was authorized to levy whatever was required to maintain the fund in an amount not less than $500,000.
This pension system under Chapter 21590 is an elective one, and those policemen and firemen not electing to participate therein are covered by the general city employees’ retirement system. Each member of this system executed an individual contract with the City setting forth the mutual obligations of the parties.
The policemen’s contribution to the fund originally was 2% of their wages, but was subsequently increased to 4'%.
To satisfy its obligations under the pension contracts, the City levied at least one mill until 1960. The City followed a policy of varying its property tax contribution so that the fund balance at the end of a year showed a gradual increase. In 1959 the fund balance was $1,427,077.33, and in 1960, 1961 and 1962 the City contributions were materially decreased below the revenue a one-mill levy could produce.
From the inception of the City pension fund for firemen and policemen, the proceeds from a 1% tax on fire insurance policy premiums as authorized by F.S. Chapter 175, F.S.A., has been deposited in the fund for the exclusive benefit of municipal firemen.
In 1953 the City adopted Ordinance 1571-A which imposed a 1% tax on casualty insurance premiums as authorized in 1953 by said F.S. Ch. 185, F.S.A., for the exclusive benefit of policemen. However, the City followed the policy of commingling *535 the tax monies produced by Ch. 185 with other revenues in its police and firemen’s pension fund and used the same along with other revenue in the fund to pay benefits to policemen as provided in their contracts.
Regarding issues presented in the appeal to the District Court of Appeal, we quote from its opinion as follows:
“Appellants [petitioners here] take the position that they are entitled to: (1) benefits provided by their respective contracts with the City, and (2) benefits accruing by reason of the City’s imposition of the l'% premium tax on casualty insurance policies as authorized by Chapter 185. They reason that the City was contractually liable to each of them irrespective of the passage or nonpassage of Chapter 185 and that by the terms of the statute the City is required to grant to them additional benefits beyond their existing contractual rights. Both parties in construing Chapter 185 rely primarily upon two cases in support of their respective positions. Each of these cases dealt with the Firemen’s Pension Fund as authorized by Chapter 175; however, it is obvious that Chapter 185 is patterned after Chapter 175 and those decisions are controlling in this cause.”
In other words, the contention of the six retired policemen in the circuit court and in the District Court of Appeal was that they were entitled to the retirement benefits of Ch. 185 in addition to those provided by Ch. 21590, as amended, as specified in their retirement contracts, and that consequently none of the retirement pension benefits arising from the operation of the provisions of either of said laws, general or local, could be affected or reduced by the funds provided by the other law.
The District Court of Appeal examined the cases of Jackson v. McGrath (1945), 155 Fla. 565, 20 So.2d 907, and City of Miami v. Carter (Fla.1958), 105 So.2d 5, relied upon by appellants, but concluded they did not support appellants’ position. For example, in its consideration of City of Miami v. Carter, the District Court of Appeal said this Court construed F.S. Ch. 175, F.S.A., to require that when a city levies the 1% tax upon fire insurance policy premiums it must:
“1. Deposit the proceeds of such tax in a 'firemen’s relief and pension fund’, a ‘city pension fund for firemen and policemen’ or in a similar special fund.
“2. Use the proceeds of the tax for the exclusive use of firemen [or policemen] and their dependents.”
It also held that F.S. Ch. 175, F.S.A., and F.S. Ch. 185, F.S.A., have the same meaning, effect and intent except the former relates to firemen and the latter to policemen.
It upheld the chancellor who ruled: Ch. 185 authorizes a municipality to set up its own retirement plan for policemen; that the City of Tampa had such a plan which met the standards prescribed in F.S. § 185.35, F.S.A.; that the taxes levied on insurance premiums may be placed in the City’s existing pension fund for the exclusive use of their policemen or such funds may be used to pay extra benefits to policemen (F.S. § 185.35, F.S.A.); and that Ch. 185 does not require that the tax monies derived thereunder be kept in a general or joint fund for firemen and policemen, provided proper control accounts are maintained so that separation or identification of the funds for the benefit of policemen is maintained. The chancellor found such controls were provided which prevented the use of said funds for other than the pensions the policemen were entitled to. The chancellor concluded:
“ * * * and it is the court’s belief that the City of Tampa has adequately met this prerequisite and the other necessary requirements for legal and proper utilization of the tax funds in the adoption of proper ordinances, the entry of proper contracts with beneficiaries and in its accounting and ad *536 ministration of the funds for the benefit of policemen.”
Appellants insisted that the contractual obligations of the City to policemen participating in the local pension plan had been reduced by utilization of said tax proceeds accruing to it under Ch. 185; that said Chapter has benefited the City rather than the policemen. But the District Court of Appeal rejected this contention.
In their petition for writ of certiorari, petitioners contend the decision of the District Court of Appeal conflicts with Jackson v. McGrath and City of Miami v. Carter, supra, and with City of Miami v. Hall, 105 So.2d 499 (Fla.App. 3rd).
Accepting the view of the District Court of Appeal that Ch. 185 has similar meaning and effect as to city policemen as does Ch. 175 to city firemen, it is appropriate that said cases relied upon by petitioners be examined to determine if a direct conflict exists with the instant case decision invoking our certiorari jurisdiction.
It is my view there is conflict between the decision of the District Court of Appeal and the holding in City of Miami v. Carter, supra. It appears in the latter case that from 1939 to 1952 the City of Miami, pursuant to F.S. Ch. 175, F.S.A., imposed a 1% tax on the gross receipts of all premiums collected on fire and tornado insurance policies covering property within the city; that in 1939 the City of Miami created “The Miami City Employees’ Retirement System,” and during the years 1940 through 1952 paid into such fund all proceeds of said 1% tax on insurance premiums. The firemen, who were plaintiffs in the case, contended they were deprived of the full benefit of said funds. The City on the other hand insisted that said premium taxes produced $434,946.00 from 1939 through 1951 and the City had paid for the benefit of firemen during that period said sum, plus $1,119,075.00 and that said premium taxes were an integral part of firemen’s benefits under the city retirement system. The City also contended the firemen had received special benefits under the City’s retirement system not received by its general employees.
In that case, the opinion of the Supreme Court recites the chancellor found the City had used said premium taxes derived under F.S. Ch. 175, F.S.A., to reduce the contribution it was required to make to the retirement system from local revenues and that contrary to the City’s contention the firemen had never received any benefits over and above what they were entitled to receive under the City’s existing retirement system; that the chancellor held it was the duty of the City to pay the premium taxes into a separate fund in the Miami City Employees’ Retirement System, there to be administered for the sole use and benefit of the firemen members and their dependents and that he decreed that the firemen were to receive the benefits of said special fund in addition to the benefits already provided for firemen members and their dependents under the general employees’ retirement system.
The Supreme Court in the Carter case said that while Jackson v. McGrath, supra, involved the City of Miami Beach and not the City of Miami,
“ * * * nevertheless, it is clear that the same basic question was involved in that case as in this, i. e. whether a city can use the proceeds of the tax authorized under Chapter 175, F.S.A. for the benefit of all members of the city relief or pension fund, or must the funds be used exclusively for the benefit of firemen members and their dependents.”
This Court, in answering this question in the Carter case, said that the views expressed in the case of Jackson v. McGrath :
“ * * * leave no doubt that the funds derived from the tax authorized under Chapter 175, F.S.A., must be held, administered and used for the sole use and benefit of firemen and their dependents. It is permissible to pay the funds into the general pension or re *537 tirement fund of the City but within that fund they must be held in a ‘firemen’s relief and pension fund’, a ‘city pension fund for firemen and policemen’ or in a similar special fund.”
This Court further said:
"[4] The City argues that no provision appears in Chapter 175, F.S.A., to the effect that the firemen should get the sole benefit of the insurance tax in addition to the benefits they receive under its retirement system. This argument is of no avail as the Act does not make the firemen’s right to the benefit of the tax contingent in any way upon the provisions of any other pension or retirement fund that may possibly include them in its operation.” (Emphasis supplied.)
In further construing the provisions of F.S. Chapter 175, F.S.A., this Court held:
“We cannot interpret these provisions to mean that the firemen shall not receive the benefit of the tax monies in addition to benefits received from any other pension fund. The City cannot place upon the firemen the obligation to prove that the Act’s intent was that they derive the benefit of the tax in addition to benefits derived from other pension or retirement systems or funds. (Emphasis supplied.)
“[5] It may be that the effect of the conclusion that the firemen are entitled to the sole use and benefit of the tax monies, when considered along with the benefits derived by them under the City’s retirement system, is to render the provisions of the retirement system overly liberal, too expensive to the City or discriminatory as to other City employees. If such is the effect the City is of course at liberty to seek remedy through amendment to its retirement system, but it is not a matter to be settled by judicial decree.
“We therefore must and do conclude that the tax monies involved herein were not used for the exclusive benefit of the firemen.”
The excerpts quoted above from the Carter case appear to directly conflict with the decision of the District Court of Appeal in this case.
However, the respondents contend there are distinguishing features in the instant case which take it out of the principles announced in the Carter case. They contend that the policemen’s retirement or pension rights are controlled by contracts which contemplate the use of the proceeds derived from the premium taxes imposed pursuant to F.S. Ch. 185, F.S.A. They maintain that Ch. 21590, the Special Act of 1941 which pre-existed F.S. Ch. 185, F.S.A., and provided for the City’s pension plan for its firemen and policemen, contemplated the use not only of the local tax revenues provided for therein to meet the requirements of said fund, but also revenues provided by any other law which they maintain included the funds derived from the operation of Ch. 185. They contend the case at bar differs from the Carter case because the Ch. 185 premium tax proceeds were deposited in the City of Tampa’s pension fund for firemen and policemen and that the funds so deposited were used exclusively for policemen or their dependents, whereas in the Carter case the City of Miami deposited the Ch. 175 funds in its pension or retirement fund for the general employees of the City of Miami and used such funds for such general employees and not exclusively for its firemen. The District Court of Appeal agreed with these contentions of respondents and specifically held:
“ * * * the contract clearly provides that the city was required to build up this fund until a reserve of $500,000 was established and to maintain such a reserve; this the City has admittedly done. The contract further provided that ‘ * * * thereafter such sum of money shall be raised annually by ad valorem taxes, which together with the other revenues provided by this or any v *538 other law, will be sufficient to maintain said fund at an amount of not less than $500,000.’ The City by ‘other law’ levied the 1% premium tax authorized by Chapter 185 and earmarked the proceeds of same to the special ‘firemen and policemen’s retirement fund.’ We find nothing in the contract or Chapter 185 requiring the City to pay any special benefits from the proceeds derived from a levy under said chapter other than those now available under the existing contractual pension plan.”
I agree that if a city satisfies the provisions of F.S. § 185.35, F.S.A., and adopts a retirement or pension plan for all its policemen commensurate with said section and commences making the required contributions to the plan on and after July 1, 1964 and otherwise complies with said section, it is entitled to participate in the proceeds of the premium taxes derived under F.S. Chapter 185, F.S.A. F.S. Section 185.35, F.S.A., had its origin in Section 7 of Chapter 59-320, as amended by Section 2 of Chapter 61-119, and Section 3 of Chapter 63-196, Laws of Florida. But prior thereto and with particular reference to the pension rights of petitioners, the retired six policemen of the City of Tampa, it does not clearly appear in the record that the City has as yet come under F.S. § 185.35, F.S.A., so as to participate in said funds. On the contrary, under other and earlier provisions of F.S. Ch. 185, F. S.A., that is to say under F.S. §§ 185.03, 185.07 and 185.08(1), F.S.A., the City made provision by ordinance 1571-A in 1953 for the imposition of the 1% excise tax on premiums paid on casualty insurance and deposited the proceeds in its City pension fund for firemen and policemen as an integral part thereof. There these proceeds should have been kept in a separate account (F.S. §§ 185.11 and 185.30, F.S.A.), and used exclusively for the benefit of policemen and their dependents, in accordance- with tlie uniform state retirement plan provided for all municipal police in applicable provisions of Ch. 185, F.S. See F.S. §§ 185.04, 185.05, 185.06, 185.07, 185.-14, 185.15, 185.16, 185.18, 185.19, 185.21, F.S.A. See Attorney General Opinion 059-190, dated September 24, 1959. Upon the enactment of F.S. § 185.35, F.S.A., in 1959 the City by duly complying therewith would be authorized to commingle the pension tax funds with the local pension fund as an integral part thereof.
The transition to the participating program provided by F.S. § 185.35, F.S.A., by the 1959 Legislature and later amendments thereto is not to affect prior rights of policemen under earlier provisions of Ch. 185 except under certain conditions. Section F.S. 185.36, F.S.A. (Sec. 7, Ch. 59-320), provides:
“185.36 Rights of police officers under former law. — The rights of police officers established or declared by any former provisions of this chapter shall not be impaired nor shall their benefits be reduced by virtue of any provisions of this chapter, provided however that no member may receive the benefits under the former chapter and also be entitled to receive the benefits under this chapter as amended in 1959. Unless an election in writing is made before January 1, 1960, to the board of trustees to remain under the provisions of the former chapter, it shall be conclusively presumed that the provisions of this chapter, as amended, will apply as to all police officers. Members who have retired under the former chapter prior to the enactment of the 1959 law shall continue to receive their benefits under the former chapter. Nothing in this law shall be construed as.affecting benefits, due or to become due any police officer under a statutory pension plan.”
It is particularly noted that said section provides that “ * * * Nothing in this law shall be construed as affecting benefits, due or to become due any police officer under a statutory pension plan.”
*539 In respondents’ brief reference is made to the fact that F.S. § 185.03, F.S.A., recites :
“There may be hereby created a special fund to be known as the municipal police officers’ retirement trust fund, exclusively for the purposes provided in this chapter, in each incorporated city or town of this * * * and zvhich city or town does not presently have established by law a similar fund.” (Emphasis supplied.)
Reference is also made by respondents to the fact that F.S. § 185.32, F.S.A. (Sec. 28, Ch. 28230, Laws of Florida, 1953, as amended by Secs. 7 and 19 of Ch. 29615, Laws of Florida, 1955), provides Ch. 185 shall not apply to any person who is or may be eligible to become a member of any other retirement system provided by law or any retirement system provided by ordinance of any municipality.
In opposition to the inferences drawn from these references by respondents, attention is called to F.S. § 185.08, F.S.A., which provides in part:
“(1) Each incorporated city or town in this state described and classified in § 185.03, as well as each other city or town of this state which on July 31, 1953, has a lawfully established municipal police officers’ retirement trust fund or city fund providing pension or relief benefits to policemen by whatever name known, may assess and impose on every insurance company, corporation or other insurer now engaged in or carrying on, or who shall hereafter engage in or carry on the business of casualty insurance as shown by the records of the state treasurer in his capacity as state insurance commissioner, an excise or license tax in addition to any lawful license or excise tax now levied by each of the said towns respectively, amounting to one per cent of the gross amount of receipts of premiums from policy holders on all premiums collected on casualty insurance policies covering property within the corporate limits of such municipalities, respectively.” (Emphasis supplied.)
This section is a part of original Ch. 23,230' and is in pari materia with §§ 185.03 and 185.32. It had the effect of modifying §§ 185.03 and 185.32 so as to permit cities already having a pension or retirement fund or plan for their policemen prior to the enactment of Ch. 185 in 1953 to come within the purview of Ch. 185 and levy the 1% tax on premiums paid for casualty insurance and use the same separately for the benefit of their policemen who became eligible to participate in the funds accruing from said premium taxes, although they were already members of the pre-existing municipal retirement system.
It is my opinion after a careful review of F.S. Ch. 185, F.S.A., applying to retirement benefits for municipal policemen and their dependents, that there is nothing therein which distinguishes it from F.S. Ch. 175, F.S.A., which similarly applies to municipal firemen insofar as the application of the decisions in the three cases relied upon by petitioners for conflict is concerned, or, fot that matter, insofar as the merits of the case are concerned.
Merely because there were contractual agreements between the city policemen electing to come under the City pension plan established originally by Ch. 21590 creates no deviation from the application of the precedents established in those cases. Nor could Ch. 21590, an earlier special act, have the effect of modifying the much later enacted statute that became F.S. Ch. 185, F.S. A., so as to bring into the city’s firemen and policemen pension fund as an integral part thereof the funds arising from the imposition of the 1% tax on the casualty insurance premiums. The fact that these particular funds were paid into the city’s firemen and policemen pension fund rather than into the city’s general employees’ pension fund likewise made no difference or distinction. They should have been kept separate therein, duly accounted for and used exclusively for benefits for policemen and their dependents as provided in said applicable sections *540 of F.S. Ch. 185, F.S.A., if the city has not as yet complied with F.S. § 185.35, F.S.A. It is immaterial under the rationale of said cases whether said tax monies derived under Ch. 185 were deposited in said pension fund established by Ch. 21590 or under a general city employees’ pension or retirement fund. In any event, under such rationale said funds might be so deposited in either fund but it was required they be kept in a separate account and used to carry out the uniform state plan provided for municipal police (see F.S. §§ 185.04 to 185.07, inch, and §§ 185.14 to 185.16, inch, and §§ 185.18, 185.19 and 185.21, F.S.A.) and in nowise reduce, augment or stand in lieu of the local pension plan or be used to pay benefits under the contracts of said local plan. In this connection it is recalled that in the Carter case this Court said with respect to the analogous tax monies for firemen benefits :
“We cannot interpret these provisions to mean that the firemen shall not [emphasis Court’s] receive the benefit of the tax monies in addition to benefits received from any other pension fund. The City cannot place upon the firemen the obligation to prove that the Act’s intent was that they derive the benefit of the tax in addition to benefits derived from other pension or retirement systems or funds.” (Emphasis supplied.)
Further, the Court there said:
“[4] The City argues that no provision appears in Chapter 175, F.S.A., to the effect that the firemen should get the sole benefit of the insurance tax in addition to benefits they receive under its retirement system. This argument is of no avail as the Act does not make the firemen’s right to the benefit of the tax contingent in any way upon the provisions of any other pension or retirement fund that may possibly include them in its operation.”
F.S. Section 185.35, F.S.A., provides in part:
“(1) In order for cities with their own pension plans for policemen or for policemen and other employees to participate in the distribution of the tax fund established in §§ 185.07, 185.08 and 185.09, their retirement funds must meet each of the following standards:” [Then follows several criteria that must be satisfied.]
Then said section provides:
“(2) When a municipality has a policemen’s retirement plan which meets the standards set forth in subsection (1), the board of trustees of the pension plan or the official pension committee or agency, may place the income from the premium tax in § 185.08 in its existing pension fund for the sole and exclusive use of their policemen (or for firemen and policemen where included), or may use said income to pay extra benefits to the policemen.”
Despite the chancellor’s finding to the contrary, the record fails to disclose the City has satisfied the requirements of F.S. § 185.35, F.S.A., and it is my view there should be no affirmance unless it is clearly indicated due compliance with said section has occurred.
The Carter decision was rendered in 1958. There was no authority for changing its application until the passage of Ch. 63-249 (F.S. § 175.351, F.S.A.), which provided the proceeds of the premium tax upon fire insurance policies could be made an integral part of a local municipal pension fund for firemen if due compliance was had with F.S. § 175.351, F.S.A.
As concerns the situation in the instant case, there was no authority for changing the application of the Carter case until 1959 when F.S. §§ 185.35 and 185.36, F.S.A., were enacted. Due compliance with §§ 185.35 and 185.36 is necessary to effect a change in order that Ch. 185 tax monies may become an integral part of a local pension plan fund. Moreover, former pension rights under Ch. 185 may be continued if a policeman so elects.
*541 There is no clear evidence in the record that the City has duly qualified to participate in the distribution of the Ch. 185 tax monies by complying with the requirements of § 185.35, nor is there any showing that the plaintiffs-petitioners, the six retired policemen, were duly brought under F.S. Ch. 185, F.S.A., as amended in 1959 (cf. F.S. § 185.36, F.S.A.). However, it may be that these two contingencies have occurred in point of fact, although there is nothing in the record below conclusively indicating they have happened. Unless and until the transition has been effected as provided by F.S. §§ 185.35 and 185.36, F.S. A., the legal principles announced in the cases relied upon by petitioners would appear to continue to be applicable to the instant case.
The rationale of the three cases relied upon by petitioners is that the funds provided by F.S. Ch. 185, F.S.A., were not to be commingled as an integral part with the local pension funds but should be used exclusively for the municipal policemen or their dependents under the state-provided uniform municipal retirement plan for police, and wholly disassociated with or affected by any benefits to be provided by the local municipal pension plan. Such funds were not to be used to reduce other policemen pension revenues or in anywise stand in lieu of same. Subsequent provisions, that is F.S. §§ 185.35 and 185.36, F.S.A., which came into existence by enactment in 1959, change this situation provided due compliance with the two sections occurs, but it is not clear from the decision under review this is the case or from the record in respect to the City of Tampa and the six retired policemen, the petitioners here. Nor can this rationale be modified by contract or by ordinance, inasmuch as F.S. Ch. 185, F.S.A., does not admit of deviation by contract or city ordinance.
The petitioners’ rights vis-a-vis the local policemen pension plan or the plan prescribed by Ch. 185 prior to 1959 do not appear susceptible of modification or reduction, legislative authority therefor not being provided. There is no warrant prior to 1959 for using Ch. 185 derived funds pro tanto in lieu of those provided pursuant to the local plan prescribed in Ch. 21590. Neither the statute as it existed prior to 1959 nor the rationale of the cases relied upon by petitioners admits of such construction.
I think the judgment and decision below should be quashed with directions that the rights of the petitioners be re-examined in the light of the foregoing reasons; without prejudice, however, to a determination as to whether the city and the petitioners may have in fact come under the provisions of F.S. §§ 185.35 and 185.36, F.S.A., respectively, the record below not being clear in this respect.