CARROLL, Judge.
This appeal from a declaratory decree was taken by certain firemen of the City of Miami who intervened. The determinative question is whether participation in the Municipal Firemen’s Pension Trust Fund of the City of Miami is limited to “duly appointed and enrolled firemen” or includes any and all other employees of the fire department whose duties call upon them to engage in fire fighting or fire prevention work. The trial judge held participation was not restricted to the former, and extended to the latter.
Provision for Municipal Firemen’s Relief and Pension Fund was made by the legislature by Chapter 19112, Laws of Florida 1939, for participation of “duly appointed and enrolled firemen,” and their dependents. The Act authorized cities having established fire departments to levy a 1% excise tax on premiums collected by insurers on fire and tornado insurance policies issued on property within the municipality and provided certain other sources of revenue for such fund, to be administered by a Board of Trustees consisting of the mayor, fire chief and a fireman. Implementing the 1939 Act the City of Miami enacted ordinance No. 6432 on September 2, 1959, which set up its Firemen’s Relief and Pension Fund. Section 2 of Ordinance 6432 contained certain definitions material to this cause as follows:
“(a) Active duty: Active duty shall mean actual services as a Fireman with permanent status in the Fire Division *25 ■of the Department of Public Safety of "the City of Miami, Florida, except for .approved leaves of absence as set forth below under paragraph (i) of this Section.
* * * * * *
“(e) Firemen: The Fire Chief, Officers, Inspectors, Enginemen and Fire-mien with permanent status in the Fire Division of the Department of Public Safety of the City, as the Board shall determine to be engaged directly in fire fighting or fire prevention work, shall be deemed Firemen for the purpose of this Ordinance.
“(f) Fund: Fund shall mean the Miami Firemen’s Relief and Pension Fund, as provided for herein.
“(g) Participant: Every fireman of the City, as defined herein, who is eligible to have monies credited to his individual account and to receive benefits therefrom under this Ordinance shall automatically become a Participant.
“(h) Permanent Status: The term permanent status shall have the meaning ascribed to it from time to time by the rules and regulations of the Civil Service Board.
“(i) Service: Service shall mean all time served as a Fireman permanently appointed under the Rules and Regulations of the Civil Service Board of the City, for which regular compensation is paid by the City; and all time, not to exceed a period of five (S) years during which a participant is absent on military leave of absence. It shall include all leaves of absence without pay for sickness, for such period of time as may be determined by the Board, in excess of accumulated sick time for which compensation is received.”
The Board of Trustees of the Miami Fund filed a complaint for declaratory decree joining as defendants the six employees named in paragraph 7 of the complaint, being employees of the fire department having job classifications other than as firemen, and whom the Board of Trustees previously had ruled were entitled to participate in' the fund. Those named defendants were joined individually and as representatives of the class of “civilian employees” of the fire department. Included in the Board’s complaint for declaratory decree were the following allegations :
“6. That the plaintiffs are in doubt as to whether certain Fire Department civilian employees who are connected with administration, Fire Prevention Bureau, Fire College, Fire Garage and Hydrant Maintenance Installation (which job descriptions are attached hereto, marked ‘Exhibit B’) are entitled to participate in The Miami Firemen’s Relief and Pension Fund.
“7. That the plaintiffs voted at their meeting on June 4, 1963, to include D. G. Berry, Fire Equipment Maintenance Supervisor, J. G. Keenan, Fire Equipment Maintenance Foreman, O. D. Owen, Fire Equipment Mechanic, W. M. Davis, Jr., Fire Equipment Mechanic, J. E. Phillips, Pipefitter Foreman II (Fire Hydrant Installation and Maintenance) and S. C. Wallace, Administrative Assistant (Fire Chief’s office) due to the nature of the afore-named individuals’ services in the City. However, at the Board of Trustees of the Miami Firemen’s Relief and Pension Fund’s meeting on July 22, 1963, the legality of including the foregoing persons as participants was objected to by the representatives of the Fund’s present participants. As a result, a controversy has arisen between present participants and Fire Department civilian employees who are not presently under the Fund’s plan but claim to be entitled to be included and to receive the benefits therefrom, which is denied by the present participants.
“Plaintiffs are in doubt as to whether the defendants and other civilian em *26 ployees of the Miami Fire Department similarly situated are entitled to become participants in The Miami Firemen’s Relief and Pension Fund.”
The prayer of the complaint included a request for a decree declaring the rights of the named parties with respect to the fund, and declaring which of the civilian employees of the fire department as listed in Exhibit B to the complaint were entitled to participate in the fund.[1]
Defendant Berry answered admitting the allegations of the complaint and joining in the prayer for declaration of the rights of the parties. The other named defendants also answered, admitting the allegations and stating their position that the action of the Board including them in the fund was proper and should be approved by the court.
In ruling that the named defendants and other such civilian employees of the fire department were entitled to participate ira the fund, the reasons relied on by the chancellor were set forth in paragraph 3 of the decree as follows:
“The named defendants were or are employed in the Fire Division of the Department of Public Safety of the City of Miami, Florida. They all receive their pay from the payroll of the Fire Division and come under the budget of that department. All of the named defendants have permanent status, but are civilian employees as far as the terminology of their official job classification is concerned, although they have been in the Fire Division for many years and in certain cases, engage in fire prevention work, respond to fires, perform the duties of fire fighters, maintain all fire fighting equipment, at the scene of fires and otherwise, and generally support and *27 assist the firemen whose prime responsibility is the actual business of fighting fires, without which support and assistance the Fire Department could not perform its function.”
Thereupon the chancellor concluded:
“It is for the foregoing reasons, that this Court finds that the named defendants come within the definition of firemen as that definition is set forth in Ordinance 6432, § 2(e), of the City of Miami, Florida, and as such, should participate in the Miami Firemen’s Relief and Pension Fund.”
In addition, the chancellor held that any employee of the fire department with a permanent status, “irrespective of such employees’ job classification” was entitled to membership and benefits of the Pension Fund, provided his principal responsibility and duty “is to engage in fire fighting or fire prevention work, or directly engage in ■support of actual fire fighting or fire prevention work.” Following the decree the ■city filed a petition for rehearing, and certain firemen were permitted to intervene and plead their objections to inclusion of •such other employees as participants in the fund. Some additional testimony was taken ■on rehearing, following which an order was entered denying the petition for rehearing and adhering to the final decree. Thereupon the intervening firemen prosecuted this appeal. In our view their appeal has merit, and we reverse.
The case of Jackson v. McGrath, 155 Fla. 565, 20 So.2d 907, established that such firemen’s pension and retirement fund monies may not be used for the benefit of others than firemen and their dependents. That case involved a firemen’s pension fund which had been separately created for the City of Miami Beach under the existing statute creating a firemen’s relief and pension fund for cities having a regularly organized fire department of designated size, and those which previously had provided for such firemen’s pension funds, as had Miami Beach. See Ch. 19112, Laws of Fla.1939, Chapter 175, Florida Statutes 1941, F.S.A., § 175.01 et seq. In that case the trial court held that monies received therefor by the City of Miami Beach could be placed in its general Employee Pension Annuity and Retirement Fund and used for the benefit of all members thereof. On appeal by members of the fire department the Supreme Court held it was proper to place the state derived monies of the firemen’s pension fund in the general pension fund of the city, but held that the trial court was in error in concluding that such monies could be used for benefit of all members of the city general pension and retirement program. On that point the Supreme Court of Florida said:
“It appears to us from a study of the applicable statutes that the monies received from the state comptroller may be lawfully placed and kept in the General Employee Pension, Annuity and Retirement Fund of the City of Miami Beach, but that they must be there held and administered for the sole use and benefit of firemen members and their dependents and not for all employees in the service of the city.
* * * * * #
“Such taxes collected by the state treasurer for each such city or town are required to be kept by the treasurer, as insurance commissioner, in a separate account, and, after deduction of the necessary expenses incurred in carrying out the provisions of the act, are to be paid into a special fund in the state treasury to be known as the 'Municipal Firemen’s Pension Fund’. Each year the state comptroller is required to draw his warrant on the state treasurer for the full net amount of money then within the state treasury in the ‘Municipal Firemen’s Pension Fund’ to the credit of each city or town entitled to the same and to pay it over to each such municipality. Section 175.07 Florida Statutes 1941. Upon receipt of such monies from the state treasury, the city or town involved is required to *28 pay it immediately into its Firemen’s Relief and Pension Fund, or into its Pension Fund for Firemen and Policemen, where such latter fund exists. Section 175.08, Florida Statutes, 1941, F.S.A.
* * * * * *
“But we cannot agree with the chancellor’s findings that, when once paid into the General Employee Pension Annuity and Retirement Fund of Miami Beach, such monies thereafter are to be administered by the trustees of that fund for the use and benefit of all member employees in the service of the City of Miami Beach. Chapter 19112, supra, by express language creates a special fund to be used exclusively for the purposes provided in the statute. Section 175.01, Florida Statutes 1941. The exclusive purposes for which the fund is created by the statute, and for which the proceeds must be used, are: to provide pensions for certain regularly employed, appointed and enrolled firemen who have attained a certain age and length of service in a municipal fire department, section 175.11, Florida Statutes 1941; to provide accident or health benefits to paid or volunteer firemen who receive total and permanent disability in the performance of duty, or who suffer temporary sickness or disability caused or sustained while in the discharge of duty, sections 175.16, 175.17, Florida Statutes 1941; to provide benefits to widows and minor children of firemen who are killed or die from injuries received in service, section 175.13, Florida Statutes 1941; to provide benefits to widows and minor children of deceased pensioners, section 175.12, Florida Statutes 1941; and to provide funeral expenses in the event of death of a pensioner, or of a volunteer or paid fireman regularly acting as such, section 175.18, Florida Statutes 1941. We think it clearly contemplated by the statute that upon receipt of monies from the state comptroller out of the State Municipal Firemen’s Pension Fund, such monies are to be kept and administered by each municipality receiving the same for these exclusive purposes, and for such purposes only. Nowhere in the controlling statute is it provided, or even remotely suggested or inferred, that employees other than firemen are to participate in these proceeds. Throughout the act it is manifestly clear that the purpose of the act is to provide a system of relief for firemen and their dependents, and for no other class of employees.”
It is clear from the act of the legislature under which the Miami Fund was authorized and created, that such fund is for the benefit of and limited to regularly enrolled firemen (and their dependents) in recognition of the extraordinary hazards of the occupation. Language of the statute and the Miami Ordinance presents no ambiguity in that regard. The fact that employees of the fire department, other than those enrolled as firemen, may in the course of their duties take part in fire fighting or fire prevention work (as the evidence indicated applied in the case of the named defendants, except one) does not entitle such “civilian-employees” of the department to participate in this fund specially created and reserved for firemen, and we hold that in reaching a contrary conclusion the able trial judge incorrectly interpreted the meaning and intent of the enabling statute and the city’s ordinance thereunder. Likewise, we are impelled to disagree with the ruling of the trial judge, which went further, in his holding that employees of the fire department,, other than firemen, should be permitted to-participate in the fund if they were “directly engaged in support of actual fire fighting or fire prevention work.”
The appellees contended, and the trial judge so concluded, that under the definition of “Firemen” as set forth in subpara-graph (e) of § 2 of the city’s ordinance 6432 there are to be included as participants in the Firemen’s Relief and Pension Fund *29 any employees of the fire department whom the Board should determine are. engaged directly in fire fighting or fire prevention work. That contention must be rejected.
The underlying statute authorizing the taxation which constitutes the main revenue for the fund makes it applicable to the duly enrolled firemen. In implementing the statute and exercising the benefits granted thereúnder, the city may not extend the benefits of the fund beyond that specified for it in the statute, and in our view § 2(e) of the city’s ordinance did not attempt to do so. Properly construed, § 2(e) of the ordinance, in defining firemen for the purpose of the pension fund, does not purport to extend the benefits of the fund to employees other than firemen, but on the contrary restricts participation in the fund to those employed firemen whom the Board shall determine are engaged directly in fire fighting or fire prevention work. Under the ordinance the firemen granted participation in the fund are those (including the fire chief, officers, inspectors, and engine-men) having permanent status in the fire division of the department of public safety of the city, as the Board shall find are engaged directly in fire fighting or in fire prevention work. Consistent with the nature and purpose of the fund, subsection (e) of § 2 of the ordinance operates to exclude from participation even those “firemen” whom the Board shall determine are not engaged directly in fire fighting or fire prevention work. Thus construed, § 2(e) has meaning and purpose which conforms to the underlying statute, in that it does not provide for inclusion of employees other than those classified as firemen, and even would exclude firemen whose duties do not in the judgment of the Board of Trustees, project them directly into fire fighting or fire prevention work.
Pension and retirement funds established for municipal employees generally are available to employees of the fire department. The Firemen’s Pension and Retirement Fund provided for through special taxation by or under authority of Ch. 175 Fla. Stat., F.S.A.,.is an extra protection and reward made .available by the legislature to members of established municipal fire departments who, as duly enrolled firemen, have assumed and followed on behalf of the public an extrahazardous duty. The funds should not be diluted and diverted to other persons or purposes. Jackson v. McGrath, supra.
Accordingly the decree appealed from is reversed.
Reversed.

. Exhibit B listed certain employees with tlieir respective functions as follows: TYPIST CLERK II, whose major function was “To perform responsible and varied clerical work, including the skilled use of a typewriter”; TYPIST CLERK III, whose major function was “To perform highly responsible varied , and complex clerical work including the skilled use of a typewriter”; STENOGRAPHER CLERK II, major function: “To perform responsible and varied clerical work including taking and transcribing oral dictation”; ADMINISTRATIVE ASSISTANT, major function: “To assist the department head or administrator in important and varied clerical and/or secretarial work”; STOCK CLERK I, major function: "To perform routine manual and clerical work in a stock room”; MAINTENANCE REPAIRMAN (Automotive Mechanic, Cax-penter, Electrician, Pipefitter, Plumber, Painter, Cement Finisher, General) whose major function was listed as “To perform manual work, both semi-skilled and skilled in one or more of the skilled crafts”; AUTOMOTIVE MECHANIC, major function: “To perform mechanical work in the repair and maintenance of diversified automotive equipment”; EQUIPMENT MECHANIC, major function: “To repair, maintain and rebuild automotive equipment used for fire fighting purposes”; FIRE EQUIPMENT MAINTENANCE FOREMAN, major function: “To supervise and perform mechanical work in the operation of a repair and overhall shop for specialized fire fighting equipment”; FIRE EQUIPMENT MAINTENANCE SUPERVISOR, major function: “To supervise and perform mechanical work in the operation of a repair and overhall shop for specialized fire fighting equipment”; FIRE EQUIPMENT MAINTENANCE SUPERVISOR, major function: “To direct the repair, maintenance and rebuilding of fire fighting automotive equipment and to assist in the maintenance of the high pressure water system”; CUSTODIAL WORKER I, major function: “To perform cleaning, custodial, and related work in a city building, plant or institution”; LABORER II, whose work was listed as “Manual or semi-skilled work of more than ordinary difficulty, often involving the use of job acquired skills”; PIPE-FITTER FOREMAN I, major function: “To perform highly skilled work and supervise a crew of workers in the maintenance of City water and sewage system and/or the maintenance of the Fire High Pressure System” ; PIPEFITTER FOREMAN II, major function : “To perform supervisory and specialized work in the repair and maintenance of large water mains, high pressure lines or emergency work under adverse conditions.”